## STATE v. CLYDE McLEAN.

(Filed 17 October, 1951.)

**1. Automobiles § 28a—**

Where the violation of the provisions of G.S. 20-140 is committed in such a reckless and careless manner as to evince a complete and thoughtless disregard for the rights and safety of others, it amounts to culpable negligence, and when such violation proximately results in the death of another, it constitutes manslaughter or even murder, dependent upon the degree of negligence.

**2. Automobiles § 28c—Evidence of culpable negligence held sufficient to support conviction of manslaughter.**

Evidence tending to show that a person was riding on the running board of defendant's car with defendant's knowledge and acquiescence, that defendant drove the car forty to fifty miles per hour along a dirt road through a cloud of dust of sufficient density to interfere with his vision, swinging his car back and forth across the highway, and that the car sideswiped another car traveling in the opposite direction, in which collision the passenger on the running board was fatally injured, *is held* sufficient to be submitted to the jury in a prosecution for manslaughter, irrespective of the question of defendant's intoxication even though it may have been a contributing factor in defendant's reckless driving, since defendant in the exercise of ordinary prevision could have foreseen that the passenger on the running board might be seriously injured or killed as a result of such reckless operation of the car, regardless of whether it came into contact with another vehicle or not.

**3. Criminal Law § 53d—**

Where the charge fully instructs the jury as to the evidence and the contentions of the parties and defines the law applicable thereto, it complies with G.S. 1-180, and a defendant desiring further elaboration and explanation of the law must tender prayers for instructions.

APPEAL by defendant from *Grady, Emergency Judge,* July 1951 Special Term, LEE. No error.

Defendant was tried upon an indictment charging him with manslaughter in the death of one James Edward Medlin.

The State offered evidence which tended to show that on the evening of 17 September, 1950, E. L. Fore, a resident of Sanford, North Carolina, was traveling in an automobile in the direction of his home. The road over which he was passing was a red dirt and gravel country road and at the time was covered with a cloud of dust caused by a passing automobile, which cloud of dust was sufficient to prevent a driver from seeing clearly. The defendant, with whom witness, Fore, was not acquainted, was traveling in the opposite direction. The road was straight at the point where the two cars met, although defendant had just passed through a curve some 300 feet away.

When defendant came into view of Fore, James Edward Medlin was squatting on the left running board of defendant's car and was holding onto the car. Defendant was driving his automobile at a speed of 40 to 50 miles per hour in a zig-zag fashion, so that he crossed the center of the road six or eight times in the distance of 100 yards. Immediately before the collision, defendant swung to his left and it appeared that the two cars would meet head-on. Defendant then swung sharply to his right in such a way as to sideswipe the automobile driven by Fore. Medlin was caught between the two cars, thrown to the highway and fatally injured. It was admitted at the trial that Medlin came to his death as a result of the collision. Defendant knew that Medlin was in a squatting position on the left running board of his car. Immediately after the collision, a man who gave the appearance of holding something in his arms ran from defendant's car.

Defendant and Fore carried the injured man to the hospital. There Fore smelled the odor of liquor on defendant's breath. He was clumsy, and when the nurse asked him to hurry, he kept saying, "His foot is broke." About one and one-half hours later, two of the sheriff's deputies met the defendant in a taxi on his way from Sanford to the scene of the collision, stopped the taxi and discovered at that time that defendant was highly intoxicated.

Defendant later went to the home of Fore, in company with another man, and in a conversation with Mrs. Fore contended that he was sober when the collision occurred, but in order to settle his nerves, he drank a quantity of liquor after the injured man was taken to the hospital and that accounted for his intoxication. Defendant inquired of Mrs. Fore if she and her husband were going to get on the stand and swear that he was intoxicated and he said to her, "I have eight men to prove I wasn't drunk and you all will look mighty small to go on the stand and testify that I was." Mrs. Fore advised defendant that she did not get near enough to him to find out whether he was drunk or not, but that her husband would tell the truth. He answered, "You see, I'm kind of a red-faced man. People are always trying to say I am drunk but I'm not." The defendant also told Mrs. Fore, "If you tell I was drunk, I won't have enough money to fix the car." Defendant said in the presence of Mrs. Fore that he knew that the boy was on the running board and that he was "stooped down." There was evidence of defendant's bad character to the effect that he had been engaged in the liquor traffic.

The defendant was convicted of involuntary manslaughter and sentenced to the State's Prison for a term of five to seven years. Defendant excepted and appealed.

---

STATE v. McLEAN.

---

*Attorney-General McMullan and Assistant Attorney-General Bruton for the State.*

*Seawell & Seawell for defendant, appellant.*

VALENTINE, J. This appeal presents two questions: (1) Was the evidence, considered in the light most favorable to the State, sufficient to withstand defendant's motion for judgment as of nonsuit? (2) Did the court below comply with G.S. 1-180 in its charge to the jury? Both of these questions must be answered in the affirmative.

It has long been a violation of the common law to inflict injury upon a human being by culpable negligence, and if death results, the offender under certain circumstances may be called upon to answer to the charge of manslaughter or even murder. 99 A.L.R., 756.

With the development of civilization and the resulting transition from animal-drawn vehicles to the intricate and expansive system of motorized transportation, it has become necessary for the protection of life and property to enact and maintain a code of rules regulating the operation of motor vehicles on the highways. A part of this code is G.S. 20-140, which is as follows:

"Any person who drives any vehicle upon a highway carelessly and heedlessly in wilful or wanton disregard of the rights or safety of others, or without due caution and circumspection and at a speed or in a manner so as to endanger or be likely to endanger any person or property, shall be guilty of reckless driving, and upon conviction shall be punished as provided in 20-180."

A violation of this statute may subject the offender to both civil and criminal liability. There may be a violation of this statute as a result of which the offender is subjected, in addition to civil liability, only to the penalty prescribed by statute, but when the negligent acts are reckless to the point of culpability and are sufficient to evince a complete and thoughtless disregard for the rights and safety of other persons using the highways, it then becomes criminal negligence and the driver of a motor vehicle so offending may be called upon to answer for manslaughter.

The distinction between criminal and civil liability arising out of the reckless operation of an automobile on the public highways of North Carolina is clearly pointed out in *S. v. Cope*, 204 N.C. 28, 167 S.E. 456, where it is said:

"Actionable negligence in the law of torts is a breach of some duty imposed by law or a want of due care—commensurate care under the circumstances—which proximately results in injury to another. *Small v. Utilities Co.*, 200 N.C. 719, 158 S.E. 385; *Eller v. Dent*, 203 N.C. 439;

*Hurt v. Power Co.,* 194 N.C. 696, 140 S.E. 730; *Ramsbottom v. R. R.,* 138 N.C. 39, 50 S.E. 448; *Drum v. Miller,* 135 N.C. 204, 47 S.E. 421.

"The violation of a statute or ordinance, intended and designed to prevent injury to persons or property, whether done intentionally or otherwise, is negligence *per se,* and renders one civilly liable in damages, if its violation proximately result in injury to another; for, in such case, the statute or ordinance becomes the standard of conduct or the rule of the prudent man. *King v. Pope,* 202 N.C. 554, 163 S.E. 447; *Godfrey v. Coach Co.,* 201 N.C. 264, 159 S.E. 412; *Taylor v. Stewart,* 172 N.C. 203, 90 S.E. 134.

"Culpable negligence in the law of crimes is something more than actionable negligence in the law of torts. *S. v. Stansell,* 203 N.C. 69, 164 S.E. 580; *S. v. Rountree,* 181 N.C. 535, 106 S.E. 669.

"Culpable negligence is such recklessness or carelessness, proximately resulting in injury or death, as imports a thoughtless disregard of consequences or a heedless indifference to the safety and rights of others. *S. v. Whaley,* 191 N.C. 387, 132 S.E. 6; *S. v. Rountree, supra.*

"However, if the inadvertent violation of a prohibitory statute or ordinance be accompanied by recklessness or probable consequences of a dangerous nature, when tested by the rule of reasonable prevision, amounting altogether to a thoughtless disregard of consequences or a heedless indifference to the safety and rights of others, then such negligence, if injury or death proximately ensue, would be culpable and the actor guilty of an assault or manslaughter, and under some circumstances of murder. *S. v. Trott, supra* (190 N.C. 674, 130 S.E. 627); *S. v. Sudderth, supra* (184 N.C. 753, 114 S.E. 828); *S. v. Trollinger,* 162 N.C. 618, 77 S.E. 957; *S. v. Limerick,* 146 N.C. 649, 61 S.E. 567; *S. v. Stitt,* 146 N.C. 643, 61 S.E. 566; *S. v. Turnage,* 138 N.C. 566, 49 S.E. 913."

The evidence of the State, which was accepted by the jury, brings the conduct of the defendant within the culpable negligence rule and subjects him to criminal responsibility for the wrongful acts which resulted in the death of James Edward Medlin.

This case does not turn upon the question of defendant's intoxication, although there was substantial evidence on that point which the jury was entitled to take into consideration. The fact of intoxication may well have been a contributing factor in the defendant's reckless operation of his automobile. He knew that Medlin was perched precariously on his running board and that he might be seriously injured or killed by the swaying motion of the automobile, whether it came in contact with another vehicle or not, and notwithstanding this fact, the defendant at a speed of 40 to 50 miles an hour drove through a cloud of dust of sufficient density to interfere with his vision, swinging his car back and forth across the highway.

The Court fully instructed the jury as to the evidence and the contentions of the parties and defined the law applicable thereto. "If the defendant desired further elaboration and explanation of the law he should have tendered prayers for instructions. In the absence thereof he cannot now complain." *S. v. Gordon,* 224 N.C. 304, 30 S.E. 2d 43 (decided prior to 1949 amendment).

The remaining exceptions in the record have been carefully examined and each is found to be without merit. The Judge's charge substantially complied with all the provisions of G.S. 1-180, as amended by Chapter 107, Session Laws 1949. On the entire record defendant appears to have had a fair and impartial trial and as no reversible error has been made to appear, the result will be upheld.

No error.