VIVIAN EDNEY LETTERMAN and husband. CHARLES LETTERMAN: C. R. EDNEY and wife, DOLLEY WASHBURN EDNEY v. ENGLISH MICA COMPANY and HARRIS CLAY COMPANY.

(Filed 25 March, 1959.)

**1. Trespass § 1a—**

Any entry on land in the peaceable possession of another is deemed a trespass entitling the possessor to nominal damages at least, regardless of force or the form of the instrumentality breaking the close. or the intent of the trespasser.

**2. Trespass § 1e: Waters and Watercourses § 7—**

The proprietor of a dam is not ordinarily an insurer, but is required only to exercise ordinary care in the maintenance and operation thereof.

**3. Pleadings § 15—**

A demurrer admits the truth of the facts alleged and relevant inferences of fact deducible therefrom, but does not admit inferences or conclusions of law.

**4. Trespass § 1e: Waters and Watercourses § 7— Complaint held insufficient to state cause of action in trespass in operation of dam.**

The complaint alleged in effect that the dam below plaintiff's property caused no damage while operated by demurring defendant's predecessor, that demurring defendant breached the provisions of its easement, knew that the other defendant was discharging excessive dirt in the river above plaintiff's property, and that the demurring defendant wrongfully and negligently maintained the dam so that it caused sediment to be deposited on plaintiff's land, resulting in rendering plaintiff's fords impassable and causing the river to overflow plaintiff's bottom lands to plaintiff's damage. *Held:* In the absence of allegation of specific acts of improper maintenance or operation of the dam by the demurring defendant or in what manner it breached the provisions of its easement, or of any violation of G.S. 77-7, the demurrer was properly sustained.

**5. Same—**

The doctrine of *res ipsa loquitur* does not apply to obviate the necessity of proving improper or negligent operation of a dam in an action by an upper proprietor to recover for alleged injuries to his lands therefrom.

Appeal by plaintiffs from *Huskins, J.,* in Chambers, 20 December, 1958, in Mitchell.

The action was instituted 16 June, 1958, by issuance of summons and filing of complaint.

In substance, the complaint alleges that plaintiffs own land fronting on North Toe River and cartways, appurtenant to said land, fording the river to the public highway, that Harris Clay Company owns and operates a mica mine about two miles upstream and English Mica

Company owns and maintains a dam about one-half mile downstream from the land, that Harris Clay Company in its mining operations puts an excessive amount of dirt in the stream, a large part of which is washed downstream to the backed water of the dam, that because of the deposit of dirt in the river and the manner in which the dam is maintained, the normal level of still water impounded by the dam has risen and backed upon plaintiffs' land and roadways, constituting a trespass and resulting in damage to plaintiffs for which they seek to recover.

The defendant, English Mica Company, in apt time demurred on the ground that the facts stated in the complaint do not constitute a cause of action against it. The court sustained the demurrer.

The allegations of the complaint with respect to English Mica Company, in addition to the facts summarized above, are:

"(6) About the year 1938, Ray Dent erected a dam across Toe River, about one-half mile down the stream below plaintiffs' land, and in the year 1941 conveyed the land whereon the dam is located to the English Mica Company.

"(7) That as long as Ray Dent owned and maintained the dam, he operated and maintained it in a manner that did not back the water above the 'Cow Ford' at normal times. That English Mica Company has wrongfully and negligently and in breach of the provision of its easement so maintained and operated the dam, knowing that its codefendant Harris Clay Company was putting an excessive amount of dirt in the river; wrongfully, negligently and in breach of and above and beyond the boundaries of its easement so maintained and operated the dam that it has caused sediment to fill up and back up raising both the floor of the bed of the stream and the water of the stream of North Toe River above the original level of the floor and the water of the stream at the 'Cow Ford,' at all times, and farther upstream than the easement of the defendants and has blocked plaintiffs' ford farther upstream known as the 'Lessenberry Ford' to such an extent that both fords have been rendered impassable by any means of conveyance for several years, destroying plaintiffs' only access to their lands and home from the public highway, and has caused the river to overflow several acres of plaintiffs' bottom lands and seriously damaging it for agriculture purposes.

"(8) That the defendant English Mica Company knew or, by reasonable care, would have known that while it was maintained, the dam, that its codefendant Harris Clay Company was carrying on hydraulic mining about two miles upstream and was wrongfully putting an excessive amount of dirt in the stream, polluting the water and filling

up the bed of the stream with sediment, much of which washed down to the backed water of plaintiffs' dam and was unusually backed up by the still and impounded water of defendant's dam onto the lands and fords of the plaintiffs, and knew that the combined result of its wrongful maintaining of its dam and the wrongfully polluting of the stream by Harris Clay Company was wrongfully blocking plaintiffs' only access to their lands and flooding their fields, to plaintiffs' great inconvenience and financial damage."

"(10) . . . English Mica Company knew or, by reasonable care, would have known it was maintaining its dam in such away as to cause the sediment of the stream, especially in connection with the excessive amount of sediment put in the stream by Harris Clay Company, to block plaintiffs' fords and flood plaintiffs' fields, and each of the defendants, with such knowledge, continued, negligently, to operate and maintain the dam and operate the mines from week to week and month to month up to the time of bringing this action, to the plaintiffs' substantial damage."

"(12) That by reason of the joint wrongs and torts of the defendants to plaintiffs' lands and easement the plaintiffs have been damaged in the sum of at least $8,000.00.

"(13) That the trespass wrongs and torts of the defendants, as hereinabove alleged, are a continuing trespass by the defendants on plaintiffs' lands and easements . . ."

From judgment sustaining the demurrer plaintiffs appealed.

*R. W. Wilson for plaintiffs, appellants.*

*McBee and McBee, G. D. Bailey and W. E. Anglin for defendant, English Mica Company, appellee.*

MOORE, J. Plaintiffs contend that they alleged sufficient facts to constitute a cause of action for a continuing trespass on the part of English Mica Company on their land and roadways.

"At common law, every man's land was deemed to be inclosed, so that every unwarrantable entry on such land necessarily carried with it some damage for which the trespasser was liable. Any entry on land in the peaceable possession of another is deemed a trespass, without regard to the amount of force used, and neither the form of the instrumentality by which the close is broken nor the extent of the damages is material. . . . whether the defendant acted intentionally is immaterial; trespass lies whether the injury to the plaintiff's possession is wilful or not, if the act which is injurious to the plaintiff is

the immediate result of the force originally applied by the defendant." 52 Am. Jur., Trespass, Sec. 12, pp. 844, 845.

In *Kinsland v. Kinsland,* 188 N.C. 810, 125 S.E. 625, it is alleged that the defendants entered upon plaintiff's land, built a dam and flooded a portion of the land. The court, holding that there was an issue for the jury, said: "The unauthorized entry upon the possession of another entitles him to nominal damages at least (*Lee v. Lee,* 180, N.C. 86) and it may be such as to evoke the equitable jurisdiction of the courts or it may result in the creation of a nuisance which the law will abate."

"As a general rule, the proprietor of a dam which has been lawfully constructed and maintained is not an insurer of the safety thereof, but is required to exercise ordinary care, in the maintenance and operation thereof, to avoid injury to others." 56 Am. Jur., Waters, Sec. 162, p. 629. "It may be that when a dam is first built that it will not injuriously affect land some distance from it, and for a long time there will be no cause for them to complain, but when the pond made by the dam fills with mud, sand, trash, and other things, causes overflows and injury to lands, then the parties injured have a cause of action, if the buildings and maintenance of the dam is the direct and proximate cause of their injury." *McDaniel v. Power Co.,* 95 S.C. 268, 78 S.E. 980, 6 A.L.R. 1321, 1323. But the owner of a dam is not responsible for injuries occasioned by causes which could not reasonably be anticipated or guarded against. 56 Am. Jur., Waters, Sec. 31, p. 560, *Cline v. Baker,* 118 N.C. 780, 24 S.E. 516.

It is our opinion that the plaintiffs have not alleged sufficient facts to show that the injuries suffered "is the immediate result of . . . force originally applied by the defendant" or that any act or omission of English Mica Company is a "direct and proximate cause of their injury."

A demurrer for the purpose of challenging the sufficiency of the pleading admits the truth of the facts alleged and the relevant inferences of fact deducible therefrom, but the demurrer does not admit inferences or conclusions of law. *Erickson v. Starling,* 235 N.C. 643, 71 S.E. 2d 384.

As against the demurring defendant, the plaintiffs allege that the dam was built by one Ray Dent in 1938, and as long as Ray Dent owned and maintained the dam it did not back water at normal times on plaintiffs' property, that Ray Dent sold it to English Mica Company in 1941; that English Mica Company breached the provisions of its easement, knew that Harris Clay Company was putting excessive dirt in the river which was coming downstream and settling

in the still water impounded by the dam, wrongfully and negligently maintained the dam and thereby caused the water to back upon the land and roadways of plaintiffs.

The complaint does not allege that the dirt was being deposited in the river at the time the dam was built. The inference is to the contrary. It alleges in substance that the dam was being properly maintained when Ray Dent owned it, but does not allege in what respect it has been maintained differently by English Mica Company. It does not allege in what manner defendant has breached the provisions of its easement, or of what its wrongful and negligent maintenance consists. It does not allege in what way defendant could have prevented the backing of the water or what its duty is with respect thereto. It is silent as to the construction and use of the dam. It alleges no violation of G.S. 77-7, if any there was.

The doctrine of *res ipsa loquitur* does not apply in this case. It does not come within the principles laid down in *Springs v. Doll,* 197 N.C. 240, 148 S.E. 251.

One fact seems clear from the pleading. The Harris Clay Company has dumped dirt into the river. The dirt has flowed down to the still water of the dam, raised the bed of the stream and caused water to back onto the plaintiffs' land and roadways. This is insufficient allegation to place responsibility on English Mica Company.

Plaintiffs cite *Moses v. Morganton,* 192 N.C. 102, 133 S.E. 421, in support of their contention. It is clearly distinguishable. In that case the dam was built after the stream had already been polluted by the city sewer and by chemicals from the factory of the shoe company. The dam immediately upon construction backed the polluted water onto plaintiff's land.

The defendant English Mica Company properly demurred.

Affirmed.