TOWN OF MARS HILL v. CLINDON HONEYCUTT

No. 7624SC648

(Filed 2 February 1977)

1. **Municipal Corporations § 20— water main in unstable ground — sufficiency of evidence of negligence**

In an action to obtain an injunction allowing plaintiff to enter upon the property of defendant for the purpose of repairing its water main which had ruptured where defendant counterclaimed for damages resulting from plaintiff's alleged negligence in failing to maintain the main in proper condition so as to prevent its rupture, evidence was sufficient to permit the jury to find that the water line belonging to plaintiff at the point immediately adjacent to defendant's .fish ponds was unstable because it was in an area in which the ground was

shifting; the line broke because of its instability in the shifting ground; the plaintiff knew of the dangerous condition but took no action to remedy it; and the flow of water from the broken main caused defendant's fish pond to overflow resulting in the loss of his rainbow trout.

2. **Municipal Corporations § 20— burst water main — maintenance of pond by defendant — no contributory negligence**

The trial court did not err in failing to submit an issue as to defendant's contributory negligence in maintaining the water level of his pond at a height above a water main and in continuing to keep fish in the pond, since there was no evidence that defendant knew or should have known that the earth was unstable or that the water main was not anchored in such a manner as to withstand the pressure put upon it by the shifting earth.

3. **Damages § 16— damages for loss of fish — improper instruction on measure of damages**

In a trial upon defendant's counterclaim for damages sustained by him when plaintiff's water main ruptured and overflowed his pond resulting in the loss of rainbow trout therein, the trial court failed to declare and explain the law with respect to damages arising on the evidence where the court's instructions gave no consideration to the cost and expense to mature, care for and market the fish which were lost.

APPEAL by plaintiff from *Lewis, Judge.* Judgment entered 19 March 1976 in Superior Court, MADISON County. Heard in Court of Appeals 13 January 1977.

Plaintiff, the Town of Mars Hill, brought this action on 8 April 1975 to obtain an injunction allowing it to enter upon the property of defendant, Clindon Honeycutt, for the purpose of repairing its water main which had ruptured. In his answer and counterclaim defendant alleged that he had been damaged as a result of plaintiff's negligence in failing to maintain the main in proper condition so as to prevent its rupture. In its reply plaintiff denied negligence on its part and alleged contributory negligence on the part of the defendant. Defendant's counterclaim against the town for the loss of fish from one of his ponds was tried before the jury.

Defendant offered evidence tending to show the following:

On 8 April 1975 he owned property adjacent to the water main that broke upon which he had built two fish ponds in 1970 and 1971. The main ruptured in 1971 when he was constructing the ponds and again in November 1974. When the main broke for a third time on 8 April 1975 at a point near the previous breaks, defendant's lower pond overflowed and many of his rainbow

trout escaped into the Upper Laurel Creek. Defendant had stocked the lower pond with 2,700 fish and had removed 67 before 8 April 1975. After the pond overflowed, he estimated that only 75 fish remained. Defendant estimated that the lost fish weighed an average of two pounds each. With respect to his damages for the loss of his fish, defendant testified as follows:

> "I have an opinion as to the fair and reasonable market value of the fish that were washed from the lower pond on about April 8 — it is $5,000. It is based on what they charge by the pound. I was selling the fish at $1 per pound. I sold them at a cafe and other places and charged $1 a pound."

Plaintiff offered evidence tending to show the following:

In the area in which it ruptured the water main is laid in the fill of a rural unpaved road. Defendant's lower pond is located adjacent to the road with the fill serving as one of its banks. From the time the main was installed in 1927 or 1928 it had never broken until defendant began constructing his ponds. Since the construction of the ponds, the soil around the water main has become wet and soggy because the water level in the lower pond is higher than the location of the water main in the adjacent road bank. The water main is not anchored in such a manner to withstand the pressure of the shifting earth. This condition caused the main to rupture in November 1974 and again on 8 April 1975. Gordon Randolph, a member of the Board of Alderman of the Town of Mars Hill, testified:

> "It was a clean snap break done with pressure. It was broken in two. It would have been hard to cut it any smoother. The break in 1974 was the same kind of break. I had made the break in 1974 known to the Town of Mars Hill. There was discussion about it. We came to the conclusion that from the looks of the bank, the lower toe of the road is weak and the whole area is shifting. Yes, we had come to this conclusion before April 8, 1975. We had discussed that there was some danger in that area that the pipe might break. As to what we discussed doing about it, we discussed it and the alternatives weren't that readily available, being the fact that we did repair it in a manner that would hold. It was a surprise to me when it happened again."

The jury found that Honeycutt's fish were lost as a result of the Town's negligence, and that he was damaged in the amount of $2,000. From a judgment entered on the verdict, plaintiff appealed.

*Joseph B. Huff for plaintiff appellant.*

*Ronald W. Howell and Carolyn Lewellen for defendant appellee.*

HEDRICK, Judge.

[1]  The Town of Mars Hill contends the court erred in denying its motions for a directed verdict. It argues that the evidence is not sufficient to support a finding by the jury that any negligence on its part was the proximate cause of the loss of Honeycutt's fish. We do not agree.

The Supreme Court stated in *Mosseller v. Asheville*, 267 N.C. 104, 107, 147 S.E. 2d 558, 561, 20 A.L.R. 3d 1286, 1290 (1966) :

"When a municipal corporation operates a system of waterworks for the sale by it of water for private consumption and use, it is acting in its proprietary or corporate capacity and is liable for injury or damage resulting from such operation to the same extent and upon the same basis as a privately owned water company would be. *Faw v. North Wilkesboro*, 253 N.C. 406, 117 S.E. 2d 14; *Candler v. Asheville*, 247 N.C. 398, 101 S.E. 2d 470; *Woodie v. North Wilkesboro*, 159 N.C. 353, 74 S.E. 924; McQuillin, Municipal Corporations, 3rd Ed., § 53.104; 56 Am. Jur., Waterworks, § 38. It is not an insurer against injury or damage by water leaking from such system. It is liable only if the escape of the water was due to its negligence either as to the initial break in the water line or in its failure to repair or cut off the line so as to stop the flow. 94 C.J.S., Waters, § 309. The reasonable care which is required of the city when engaged in such operation, like that required of a privately owned water company, includes the exercise of ordinary diligence to discover breaks in the lines and to correct such defects of which it has notice, or which it could have discovered by the exercise of reasonable inspection."

When the evidence in the present case is considered in the light most favorable to the defendant, as must be done, *Summey*

*v. Cauthen,* 283 N.C. 640, 197 S.E. 2d 549 (1973), it will permit a finding by the jury that the water line belonging to the Town at the point immediately adjacent to defendant's fish ponds was unstable because it was in an area in which the ground was shifting, and that it broke in 1974 because of its instability in the shifting ground. The evidence will permit a finding by the jury that the Town knew of the dangerous condition and that the main might break again near the same point, but that it took no action to remedy the dangerous situation. The evidence is also sufficient to permit a finding by the jury that the main broke in the area immediately adjacent to Honeycutt's fish ponds as a result of the dangerous condition of which the Town had notice, and that the flow of water from the broken main caused defendant's fish pond to overflow resulting in the loss of his rainbow trout. Under *Mosseller v. Asheville, supra,* such findings support the jury's verdict that the defendant lost his fish as a proximate result of the negligence of the Town of Mars Hill. This assignment of error has no merit.

[2] By its second assignment of error the Town contends the court erred in not submitting to the jury an issue of contributory negligence. It argues in its brief, "If appellant was negligent in failing to foresee a second break in the water line, then certainly appellee being in equal possession of the facts, was negligent in continuing to maintain the water level of the lower pond at a height above the pipeline, and in continuing to carry fish in said pond. He was in as good a position or even in a better position that appellant, to observe the entire situation and deliberately chose to maintain the status quo."

> " 'As a general rule, the proprietor of a dam which has been lawfully constructed and maintained is not an insurer of the safety thereof, but is required to exercise ordinary care, in the maintenance and operation thereof, to avoid injury to others.' 56 Am. Jur., Waters, Sec. 162, p. 629 . . . . But the owner of a dam is not responsible for injuries occasioned by causes which could not reasonably be anticipated or guarded against. 56 Am. Jur., Waters, Sec. 31, p. 560, *Cline v. Baker,* 118 N.C. 780, 24 S.E. 516." *Letterman v. Mica Co.,* 249 N.C. 769, 772, 107 S.E. 2d 753, 756 (1959).

While there is evidence in the record that the Town knew the earth around the main adjacent to defendant's ponds was

unstable, that such instability caused the break in 1974 and that another break was likely to occur, there is no evidence in the record that Honeycutt knew or should have known that the earth was unstable or that the main was not anchored in such a manner as to withstand the pressure put upon it by the shifting earth. We hold that Honeycutt could not have "reasonably anticipated" that the maintenance of his ponds at a water level higher than the location of the water main in the bank would cause the main to snap in two. This assignment of error has no merit.

[3] The Town contends the court erred in that in its charge it failed to declare and explain the law with respect to damages arising on the evidence in the case as provided by G.S. 1A-1, Rule 51(a).

On the issue of damages the court charged the jury as follows:

"I instruct you, Members of the Jury, damage to personal property is involved, and fish are personal property. The rule is, if a claimant is entitled to recover at all, he is entitled to recover what you find to be the difference between the fair market value of the personal property immediately before it was lost or damaged and its fair market value immediately after it was damaged. You will recall the evidence on that point. The fair market value of any property is the amount which has been agreed upon as a fair price by an owner who wishes to sell but is not compelled to do so and a buyer who wishes to buy but is not compelled to do so."

Although the accepted rule for the measure of damage for the destruction of a growing crop is the diminution in the value of the crop in the field, crops often have no ascertainable market value in the field, and damages are ascertained in such cases by awarding the claimant the market value of the lost portion of his crop, as measured as a matured and harvested crop, less any expenses saved in not having to care for and harvest the crop. *Whitaker v. Earnhardt*, 289 N.C. 260, 221 S.E. 2d 316 (1976).

Professor Dobbs states the rule as follows:

"Absent specific testimony as to the value of the crop in the field, courts generaly make no practical use of the stated measure of damage. Instead they usually award the

plaintiff the market value of the lost portion of his crop, as measured at maturity of the crop, less the cost he would have had in harvesting and marketing the lost portion. Under this formula, the plaintiff must prove not only how much was destroyed and its market value at maturity, but also what his probable costs of harvesting and marketing would have been as to the destroyed or damaged portion." (Footnotes omitted.) Dobbs, Law of Remedies § 5.2, at 325 (1973).

See also 21 Am. Jur. 2d, Crops § 76 (1965) ; Annot. 175 A.L.R. 159 (1948).

While there are obvious differences between growing crops in a field and growing fish in a pond, we perceive as much, if not more, difficulty in ascertaining the market value of fish lost or destroyed in a pond as the destruction of a crop growing in a field. We recognize, however, that some growing products, such as timber on the stump or cattle or swine on the hoof, have a readily ascertainable market value. In the present case there is no evidence as to the market value of the rainbow trout *in the pond*. Honeycutt testified that in his opinion the value of the fish lost was $5,000; however, he based his opinion upon the fact that he could sell the fish at one dollar per pound to restaurants *after he had harvested and delivered the fish*.

Thus the Town of Mars Hill is correct in its contention that the trial court in its instructions to the jury on the issue of damages erred by not declaring and explaining the law arising on the evidence in this case because the court's instructions give no consideration to the cost and expense to mature, care for, and market the fish which were lost as a proximate result of the Town's negligence. For error in the charge on the issue of damages the Town is entitled to a new trial on that issue.

In *Robertson v. Stanley*, 285 N.C. 561, 568, 206 S.E. 2d 190, 195 (1974), the Supreme Court stated:

" 'It is settled beyond controversy that it is entirely discretionary with the Court, Superior or Supreme, whether it will grant a partial new trial. It will generally do so when the error, or reason for the new trial, is confined to one issue, which is entirely separable from the others and it is perfectly clear that there is no danger of complication.' *Lumber Co. v. Branch*, 158 N.C. 251, 73 S.E. 164 (1911).

Accord, *Paris v. Aggregates, Inc.*, 271 N.C. 471, 157 S.E. 2d 131 (1967); *Jenkins v. Hines Co.*, 264 N.C. 83, 141 S.E. 2d 1 (1965). Before a partial new trial is ordered, 'it should clearly appear that no possible injustice can be done to either party.' *Jarrett v. Trunk Co.*, 144 N.C. 299, 56 S.E. 937 (1907)."

Since, in our opinion, the issue of damages in this case is wholly separate and distinct from the issue of liability and no injustice will result from a trial on the issue of damages alone, the judgment is vacated and the cause is remanded to the superior court for a trial on the single issue of damages.

Affirmed in part, vacated and remanded in part.

Judges VAUGHN and CLARK concur.