DeVERE C. LENTZ, JR., ADMINISTRATOR OF THE ESTATE OF THAD CLAYTON ROBERTS, JR. v. ROY B. GARDIN, ADMINISTRATOR OF THE ESTATE OF LORENE LILLARD ROBERTS

No. 71

(Filed 7 March 1978)

Negligence §§ 27.1, 37— res ipsa loquitur—effect of inference—failure to give tendered instruction—erroneous instruction

In a wrongful death action in which plaintiff's evidence tended to show that a vehicle driven by defendant's intestate left the highway for no apparent reason, the trial court erred in failing to give defendant's requested instruction that the doctrine of *res ipsa loquitur* raised only an inference of negligence and did not compel a finding of negligence on the part of defendant's intestate, and the court misstated the law in instructing the jury that the doctrine of *res ipsa loquitur* furnishes "an inference only, and it is for you to decide whether this inference is actionable negligence; that is, is it negligence that was a proximate cause of the death," since the charge given, without the requested instruction, may have erroneously led the jury to believe that the inference of negligence was binding on them and that only the second element of actionable negligence, proximate cause, remained for their consideration.

ON defendant's petition for discretionary review of the decision of the Court of Appeals which affirmed in part the judgment entered by *Griffin, J.*, at the 20 October 1975 Session of the

Superior Court of BUNCOMBE. This appeal, docketed and argued as Case No. 156 at the Fall Term 1976, is reported in 30 N.C. App. 379, 226 S.E. 2d 839 (1976).

Action for wrongful death.

For the purpose of this appeal stipulations and uncontradicted testimony establish the following facts:

Plaintiff's intestate (Mr. Roberts) and defendant's intestate (Mrs. Roberts) were husband and wife. On 22 April 1973, between 5:00 and 5:30 p.m., Mrs. Roberts was driving her 1971 white Rambler station wagon north on North Carolina Highway No. 16, a two-lane, asphalt road. The weather was clear; the road was dry and free of defects. Mr. Roberts, aged 56, was seated beside his wife on the front seat. Miss Lois Scroggs, 69 years of age, was sitting on the back seat. At the same time Mr. Tom Thomas, aged 25, was driving his 1972 Plymouth Duster automobile south on Highway No. 16 with Mr. R. E. Dancy, aged 27, on the front seat beside him.

At a point about 2.7 miles south of Wilkesboro, N. C., on "a fairly straight stretch of highway," Thomas and Dancy observed a white Rambler station wagon approaching from a distance of about 500 feet. In their opinion, both their car and the Rambler were probably driving about the speed limit of 55 MPH. The station wagon was going from one lane to the other; "the main body of the car would go from one side of the road across to the other." Finally, the station wagon swerved in front of the Plymouth, left the road, went through a fence, and crashed into a tree on the west side of the highway. Dancy left the Plymouth to determine whether he could render any assistance while Thomas drove on to summon aid. Dancy noticed that the Rambler had left 75-100 feet of skid marks on the road in the area where it had cut in front of the Plymouth. Upon approaching the Rambler he observed that "the front of the car was mashed in, and it looked like the tree was almost against the passengers." He saw a woman behind the steering wheel, a man beside her, and someone in the back seat. The man's head was "laying out the window" and moving slightly. The situation was such that Dancy could render no assistance.

Stipulations establish that Mrs. Roberts died at approximately 5:30 p.m. on 22 April 1973 from injuries received in the collision

and that Mr. Roberts died approximately one hour later from the same cause.

Thomas testified that as the Rambler moved from one lane to the other in front of him he could not see its operator. "Based upon my observations," he said, "it would have been entirely possible for the driver to have been slumped over the wheel. As far as I could tell, the person who had been driving could have been slumped down in the seat. Actually, I simply could not see a driver at any time I observed the vehicle."

At the time of his death Mr. Roberts was 56 years old. He had been retired for two years with a retirement income of $100 a week. Mr. Roberts was a man of wide interests and acquaintanceship. Members of his family testified he was in very good health although Mrs. Roberts did most of the driving because he had back trouble.

Mr. Roberts was survived by two adult children. His son, Thad Clayton Roberts III, 31 years old at the time of the trial, lived and worked in New York. He was financially independent but enjoyed a close personal relationship with his father. The daughter, Linda Roberts Jackson, aged 36, was a divorcee with four children. She received no child support and worked only part time. Her father sent her approximately $250 a month.

The witnesses called by defendant were Mrs. Clyde Scroggs Lillard and her sister, Miss Lois Scroggs, the passenger in the back seat of the Rambler at the time of the collision. Miss Scroggs was an old friend of the Roberts. She testified that she remembered nothing about the wreck or the events immediately preceding it; that she began to think clearly only after she had been in the hospital "in intensive care for four or five weeks." The testimony of Mrs. Lillard and Miss Scroggs tended to show:

Mrs. Lillard was Mrs. Robert's stepmother. She had planned a birthday dinner for her husband on 22 April 1973, and the Roberts arrived at her home on the evening of April 21st for that event. About 11:00 a.m. on April 22nd Mrs. Roberts left the Lillard residence to go to North Wilkesboro for Miss Scroggs, who was also invited to the birthday dinner. The two returned about noon. Between then and the time Mrs. Lillard served dinner—sometime between 1:00 and 2:00 p.m.—Mrs. Lillard saw Mrs. Roberts mix a drink of vodka for herself. She might have had

more than one drink but, if she did, Mrs. Lillard did not see her. The dinner lasted "not quite as long as a couple of hours," and nobody drank any alcoholic beverages during the meal. To Mrs. Lillard's knowledge, Mrs. Roberts had only one alcoholic drink after dinner and that was in the "early afternoon." However, she "doesn't know if [Mrs. Roberts] had any additional drinks that afternoon." When the Roberts left around 5:30 p.m. both appeared normal to Mrs. Lillard.

Miss Scroggs testified that she would not describe the Roberts as heavy drinkers. She had seen Mrs. Roberts drinking vodka in the kitchen before dinner but she did not recall how many drinks Mrs. Roberts had. The vodka came from a bottle which the Roberts brought with them. Miss Scroggs testified that she did not see Mrs. Roberts drink anything after dinner, but that she might have had "two or three." Miss Scroggs herself had three drinks that day. When she left the Lillard home with the Roberts in the late afternoon neither was under the influence of alcohol. The last thing she remembers on that day "was going down the driveway and then [she] woke up in the hospital."

Defendant's attempt to introduce the medical examiner's toxicology report showing the alcoholic content of Mrs. Robert's blood was unsuccessful.

After deliberating thirty-one minutes the jury found defendant negligent, plaintiff's intestate free from contributory negligence, and awarded $100,000 in damages (the amount prayed). On appeal the Court of Appeals awarded defendant a new trial upon the issue of damages only.

*Lentz & Ball, P.A. for plaintiff appellee.*

*Morris, Golding, Blue and Phillips for defendant appellant.*

SHARP, Chief Justice.

We allowed defendant's petition for discretionary review of the Court of Appeals' decision that defendant was entitled to a new trial *only* on the issue of damages. In his new brief filed in this Court, plaintiff presented for review pursuant to N.C. App. R. 16(a), the correctness of the order of the Court of Appeals awarding defendant a new trial on the issue of damages.

Of defendant's assignments of error we consider only those challenging the correctness of the trial court's charge on the doctrine of *res ipsa loquitur*.

Plaintiff relies upon this doctrine to prove his allegations that Mr. Roberts' death was proximately caused by the negligent manner in which Mrs. Roberts operated the motor vehicle at the time it left the highway. With reference to the first issue, *inter alia*, the court correctly charged:

". . . we have another principle of law applicable in this kind of case called the doctrine of *Res ipsa loquitur*, which simply means that the nature of the occurrence itself furnishes circumstantial evidence of defendant's intestate's negligence in operating the automobile. In this case defendant's intestate was driving the automobile which left the highway on a slight curve. It is unusual for an automobile to leave the highway. When it does so without apparent cause and inflicts death, an inference is raised that defendant's intestate, the driver, was negligent. . . ."

Following the portion of the charge quoted above, the trial court gave various contentions for both parties on the first issue and then charged the jury on the issues of contributory negligence and damages.

The record shows that before the judge closed his charge he invited counsel to the bench and asked if there were any comments either would like to make out of the hearing of the jury. Counsel for defendant, apprehensive that the jury would not understand the legal import of the word *inference* as used in the court's explanation of the doctrine of *res ipsa loquitur*, requested the court to charge the jury that "while the doctrine of *res ipsa loquitur* created an inference of negligence which would allow the case to go to the jury, the doctrine and inference did not require the jury to find negligence on the part of the defendant's intestate."

Instead of giving the requested instruction the court responded by charging: "Now members of the jury, on the first issue where I charged you with reference to the doctrine of Res ipsa Loquitur, which simply means that the nature of the occurrence itself furnishes circumstantial evidence of the defendant's intestate's negligence, *I further instruct you that this is an inference only, and it is for you to decide as to whether this*

*inference is actionable negligence; that is, is it negligence that was a proximate cause of the death* and making the driver's estate liable. It is an inference which brings the issue to the jury for your decision." (Emphasis added.) (This instruction constituted defendant's assignment of error No. 33.)

Counsel for defendant then approached the bench and, out of the hearing of the jury, again requested the court to instruct the jury that while the doctrine of *res ipsa loquitur* raised an inference of negligence, it was an inference only, and did not compel a finding of negligence on the part of the defendant. The court did not give this instruction, but directed the court reporter to insert the request in the record. The court's failure to give the requested instruction is the basis of defendant's assignment of error No. 34.

Since nowhere in his charge did the judge explain to the jury that it was free to accept or reject the inference of negligence which arises when a motor vehicle leaves the highway for no apparent cause, defendant argues that the addendum quoted above was tantamount to an instruction that the inference conclusively established Mrs. Roberts' negligence, and that the only issue for the jury was whether that negligence was the proximate cause of Mr. Roberts' death. This instruction, defendant contends, not only failed to state the proposition of law which his counsel had properly requested, but it misstated the law applicable to this case.

Defendant's contention is meritorious. Actionable negligence is a want of due care which proximately results in injury to another. *State v. McLean*, 234 N.C. 283, 285, 67 S.E. 2d 75, 77 (1951). Absent the requested instruction, the judge's final charge on *res ipsa loquitur* was subject to the interpretation that the inference of negligence was binding on the jury and that only the second element of actionable negligence, proximate cause, remained for their consideration. This, of course, is not the law. If the jury concluded that the inference of Mrs. Roberts' negligence was binding on them their verdict was foreclosed, as her negligence was at least a proximate cause of Mr. Roberts' death. That jurors could be easily confused about the effect of the inferences created by the doctrine of *res ipsa loquitur* is not to be doubted. After all, confusion on this point long dwelled in the minds of learned appellate court judges. *See White v. Hines*, 182 N.C. 275, 109 S.E. 31 (1921); 48 N.C. L.Rev. 452, *infra*.

The instruction which defendant requested is in accordance with the law of this State and the court should have given it. The well-established rule is succinctly stated by Byrd in his article, *Proof of Negligence in North Carolina*, 48 N.C. L.Rev. 452, 480-81 (1970):

"Proof establishing a *res ipsa* fact situation is sufficient to take the case to the jury. Such proof creates a permissible inference of negligence that the jury is free to accept or reject, and an instruction that leaves the impression that the jury may find for plaintiff upon such proof without finding defendant was negligent is erroneous. The plaintiff is entitled to recover only if he convinces the jury by a preponderance of the evidence that his injuries were caused by defendant's negligence."

"The rule [*res ipsa*] permits the jury, but not the court, to draw an inference of negligence. In other words, it is a circumstance from which the jury may, but is not compelled to, infer a want of due care." *Etheridge v. Etheridge*, 222 N.C. 616, 619, 24 S.E. 2d 477, 480 (1943). *Accord, Greene v. Nichols*, 274 N.C. 18, 161 S.E. 2d 521 (1968); *Young v. Anchor Co.*, 239 N.C. 288, 79 S.E. 2d 785 (1953); *Ridge v. R. R.*, 167 N.C. 510, 83 S.E. 762 (1914); *Stewart v. Carpet Co.*, 138 N.C. 60, 50 S.E. 562 (1905). *See* 2 Stansbury's N.C. Evidence § 227 (Brandis rev. 1973); Prosser, Law on Torts § 40 (3rd ed. 1964).

Since we hold that the instructions on negligence contained prejudicial error requiring a trial *de novo*, it is unnecessary to discuss the questions of nominal damages and the propriety of a new trial on the issue of damages alone. However, upon review, we conclude that the Court of Appeals was correct in holding that the trial judge erred in his charge on damages. As to the practice of awarding a new trial on the issue of damages alone, see *Jarrett v. Trunk Co.*, 144 N.C. 299, 302, 56 S.E. 937, 938 (1907).

Error and remanded.