### Karl M. BEST, Plaintiff,

v.

### UNITED STATES of America, Defendant.

### No. 78-25-CIV-8.

United States District Court, E. D. North Carolina.

Nov. 20, 1980.

Tommy W. Jarrett of Dees, Dees, Smith, Powell & Jarrett, Goldsboro, N. C., for plaintiff.

James L. Blackburn, First Asst. U. S. Atty., Raleigh, N. C., by William Woodward Webb, Asst. U. S. Atty., Raleigh, N. C., for defendant.

### FINDINGS OF FACT AND CONCLUSIONS OF LAW

LARKINS, Senior District Judge.

This action which was filed on June 14, 1978, pursuant to the Federal Tort Claims Act, 28 U.S.C. § 2671 *et seq.*, came on for trial before the Court without a jury at New Bern, North Carolina, on November 3, 1980. The plaintiff, Karl M. Best, was present in court and through his counsel, Tommy W. Jarrett, Esquire, and the defendant was represented by Assistant United States Attorneys William Woodward Webb and Dennis I. Moore. In his original Complaint the plaintiff· alleged, in essence, that on or about May 1, 1977, an employee or employees of the defendant, acting within the scope of their office and employment while in the operation of government aircraft, dumped on his property a large quantity of aircraft fuel or other toxic substance causing the destruction of 19.8 acres of corn thereby damaging him in the amount of $5,564.00. On November 6, 1980, the plaintiff, pursuant to Rule 15 of the Federal Rules of Civil Procedure and by leave of the court filed an Amendment to Complaint claiming, *inter alia*, that the defendant through its alleged actions on or about May 1, 1977, violated the "taking clause" of the Fifth Amendment to the Constitution of the United States of America and should, therefore, pay to him just compensation for his losses.

The contested issues for trial by the Court were stated in the final Pre-Trial Order dated October 21, 1980, and agreed to by counsel as follows:

"1. Were the plaintiff's crops injured by the negligence of the defendant's employees as alleged in the plaintiff's Complaint?"

"2. Did the defendant trespass upon the plaintiff's property by dropping thereon a quantity of aircraft fuel as alleged in the plaintiff's Complaint?"

A new issue has, of course, now emerged as a result of the Amendment to Complaint filed on November 6, 1980. That issue, as framed by this Court, is quite simply:

Did the defendant, through the actions of its employees, take the plaintiff's property without paying just compensation therefor in violation of the Fifth Amendment to the Constitution of the United States of America?

At the completion of the plaintiff's evidence and again at the close of all the evidence, the defendant moved, under Rule 41(b) of the Federal Rules of Civil Procedure, to dismiss this action on the ground that upon the facts and the law the plaintiff had shown no right to relief. This motion was taken under advisement by the Court. On the basis of the stipulated facts, the evidence of the parties offered and accepted in open court, and the argument of counsel, the Court now makes the following

### FINDINGS OF FACT

1. During the 1977 crop year the plaintiff was the lessee of a certain farm owned by Delphia Rose Smith which was and is located on the Arrington Bridge Road about six miles south of Goldsboro, North Carolina, and about three miles south of Seymour Johnson Air Force Base.

2. During the 1977 crop year the plaintiff had planted and had in cultivation two fields of corn on the Smith farm, one field having a total acreage of 14.2 acres, and the adjoining field having a total acreage of 12.1 acres.

3. On or about May 27, 1977, the plaintiff was advised by two friends that they had discovered that his corn crop on the Smith farm was deteriorating. The plaintiff himself had not been out to the farm since the end of April, 1977.

4. The plaintiff, upon being so advised, immediately went out to the Smith farm where he observed and smelled an oily substance on the corn crop. The exact area of the deterioration was oval shaped and covered several acres on both fields. The plaintiff also saw that treetops on adjacent property were damaged.

5. Not surprisingly, Government aircraft constantly traversed the area around Goldsboro and Seymour Johnson Air Force Base which, of course, includes the Smith farm, and for that reason it was and is the plaintiff's belief that the oily substance on the corn emanated from a fuel or other toxic substance dump by one of these aircraft on or about May 1, 1977.

6. The plaintiff did not see a Government airplane drop any fuel or other substance on or in the vicinity of his corn crop in May, 1977, nor does he know of anyone who did. In point of fact, neither the plaintiff nor any other person observed any fuel or substance dumping by any aircraft on or in the immediate vicinity of the corn crop in May, 1977.

7. Private air traffic, such as cropdusters and cargo airplanes, is and was also allowed in the area encompassing the Smith farm, but there is no evidence before the Court that such air traffic was or was not responsible for any dumping on the plaintiff's crops in May, 1977, or at any other time.

8. The plaintiff did not have any tests conducted to determine what the oily substance on the corn consisted of or what its origin might be.

9. The two witnesses for the plaintiff, Frank H. Baker and Durwood Davis, both testified that they made visits to the Smith farm in May of 1977, after the deterioration of the plaintiff's corn was discovered, and also observed an oily substance on the crop, adjacent treetop damage, and an oval shaped pattern to the deterioration.

10. Mr. Baker additionally testified that the trees and the corn were damaged on their eastern sides and that it was his opinion that the damage had been caused by "windborne oil," but "where it came from, I don't know."

11. Mr. Davis likewise opined that windborne oil had caused the damage and similarly confessed ignorance as to the source of the oil.

12. Neither witness, both of whom were employed by the Wayne County Agricultural Stabilization and Conservation Service in May of 1977, conducted tests on the corn crop or surrounding soil to determine the nature or origin of the oily substance.

13. The plaintiff filed his administrative claim with the Department of the Air Force on June 2, 1977, and said claim was denied on January 9, 1978.

14. The only reported incident of a fuel dump by an employee of the defendant during the month of May, 1977, occurred on May 12, 1977. On that date, Lieutenant Colonel, then Major, Jerry Sharpe, as he so testified at trial, was operating an F–4 phantom jet in a flight pattern which took him initially due west of Seymour Johnson Air Force Base and then to the north/northwest, just south of Rocky Mount, North Carolina. At that point Major Sharpe refueled from a tanker but immediately discovered a mechanical failure necessitating the dumping of a substantial quantity of fuel in order to land the aircraft. Accordingly, he commenced dumping fuel as he proceeded to descend, in a south/southeast direction, from 22,000 feet to 6,000 feet, whereupon he began a circular pattern continuing to dump fuel. Lieutenant Colonel Sharpe testified that when he completed his fuel dump, his aircraft was at 1320 L, 17202 at 3529° N, 7732° W, 6,000 feet altitude, traveling at 310 knots, dumping 650 pounds of fuel per minute or a total of 8,000 pounds of JP–4 fuel (the standard Air Force jet fuel). He also testified that May 12, 1977, was a warm spring day with the temperature in the range of 75°F, and

the wind blowing out of the west. After completing the fuel dump, Lieutenant Colonel Sharpe determined that he was still too fuel heavy to land, and, hence, executed a 180° maneuver to burn off additional fuel. Following this maneuver, Lieutenant Colonel Sharpe proceeded to land the aircraft in an east to west flight path. This incident was subsequently reported to appropriate military personnel, and all official procedures and regulations governing the dumping of fuel were adhered to by Lieutenant Colonel Sharpe.

15. From his testimony at trial, it is clear that Lieutenant Colonel Sharpe was never closer than twenty to twenty-five miles east of the plaintiff's corn crop during his fuel dump.

16. In July of 1977, Mr. Thomas C. Thomas, a chemist with the Air Force, conducted a chemical analysis of soil samples taken from areas surrounding the plaintiff's corn crop. Qualified as an expert at trial, Mr. Thomas stated that no JP–4 fuel traces were found in these soil samples and that irrespective of intervening heavy rainfall between the infliction of the crop damage and the collection of the samples some JP–4 fuel residue would still be in evidence.

17. Captain Harvey J. Clewell, an air quality research chemist assigned to the Air Force Engineering and Services Center, Tyndall Air Force Base, Florida, conducted a fuel droplet freefall and evaporation test based on Lieutenant Colonel Sharpe's approximate coordinates on May 12, 1977. Also qualified as an expert at trial, Captain Clewell testified that JP–4 fuel dumped at an altitude of 6,000 feet and a ground level temperature of 75°F will evaporate completely before reaching the ground. It was Captain Clewell's opinion that none of the fuel dumped by Lieutenant Colonel Sharpe on May 12, 1977, would have reached the ground.

18. There was no trace of JP–4 fuel in the soil samples taken from the area surrounding the plaintiff's corn crop, and there would have been notwithstanding a heavy rainfall between the time the damage occurred and the time the samples were collected if JP–4 fuel had, in fact, been dumped so as to descend onto the Smith farm.

19. JP–4 fuel dropped at an altitude of 6,000 feet and a ground level temperature of 75°F would have evaporated before it reached the plaintiff's corn crop.

20. Taking into account his distance from the Smith farm, the wind direction (west to east) during the course of his fuel drop, the observed damage to the *eastern* side of the corn and the adjoining trees, the results of the soil sampling as well as the fuel droplet freefall and evaporation tests, and the expert opinions of Mr. Thomas and Captain Clewell, all of which was uncontradicted, the Court concludes that it was simply not possible for Lieutenant Colonel Sharpe to have been responsible for the destruction of the plaintiff's crop.

21. The cause of the damage to the plaintiff's crop, and indeed the nature and origin of the oily substance observed on the crop by the plaintiff and his witnesses, is unknown.

On the basis of the foregoing findings of fact the Court makes the following

## CONCLUSIONS OF LAW

1. The Court has jurisdiction of this action under the Federal Tort Claims Act, 28 U.S.C. §§ 2671 *et seq.* and 1346(b).

2. In adjudicating a claim under the Federal Tort Claims Act, the Court is required to apply the law of the place where the tort allegedly occurred, or, in this instance, North Carolina. 28 U.S.C. §§ 2674 and 1346(b).

■ 3. To establish a valid claim for trespass on his property, the plaintiff under North Carolina law must show that the injurious act was the result of force originally applied by the defendant. *Letterman v. Mica Co.*, 249 N.C. 769, 107 S.E.2d 753 (1959).

■ 4. The plaintiff in this action has been unable to present evidence showing, or even tending to show except upon the most unreliable and unacceptable extrapolation,

that the damage his corn crop suffered was "the immediate result of . . . force originally applied by the defendant." *Letterman v. Mica Co., supra.*

5. To establish actionable negligence in North Carolina, the plaintiff must show a failure by the defendant to exercise proper care in the performance of some legal duty which the defendant owed the plaintiff under the circumstances, and that such negligence was the proximate cause of the injury. *Lentz v. Gardin,* 294 N.C. 425, 241 S.E.2d 508 (1978); *State v. McLean,* 234 N.C. 283, 67 S.E.2d 75 (1951).

6. In this case the plaintiff cannot identify a Government aircraft as the source of damage to his crops. His theory that a discharge from such an aircraft caused the damage is either totally refuted or based upon mere speculation and conjecture. An inference to negligence cannot be based on speculation and conjecture. *Schenfeld v. Norton Co.,* 391 F.2d 420 (10th Cir. 1968); *Monk v. Flanagan,* 263 N.C. 797, 140 S.E.2d 414 (1965); *Johnson v. Williams,* 19 N.C. App. 185, 198 S.E.2d 192 (1973).

7. The "taking clause" of the Fifth Amendment to the Constitution of the United States proscribes the acquisition of private property for public use without the payment of just compensation. In this action there is not the slightest evidence that the Government took any property of the plaintiff requiring it to pay just compensation. Clearly, the same infirmity that afflicts the claims of negligence and trespass, i. e., inability to identify the Government as the source of the damage to the plaintiff's crop, also vitiates the claim that a taking by the defendant has occurred.

8. There is no demonstrated negligence, trespass, or taking on the part of the defendant in this case, and, accordingly, the defendant's motion to dismiss under Rule 41(b) of the Federal Rules of Civil Procedure should be allowed.