JOHN DEWAYNE HOOVER v. GASTON MEMORIAL HOSPITAL, INC. AND DR. GEORGE R. MILLER

No. 7127SC47

(Filed 28 April 1971)

Physicians and Surgeons § 16— malpractice — injury while patient anesthetized — unknown cause — summary judgment

In an action against a hospital and a surgeon to recover for an injury allegedly sustained to a nerve in plaintiff's left arm while he was unconscious from anesthesia during surgery on his right arm, defendants' motion for summary judgment was properly allowed where the complaint alleged that plaintiff did not know who caused the injury or how it occurred, and defendants introduced a deposition of plaintiff showing only that he experienced pain in his left arm when he awoke in the recovery room, and depositions of the surgeon and hospital employees showing that they knew of no occurrence which could have caused the condition complained of. G.S. 1A-1, Rule 56(c).

APPEAL by plaintiff from *Falls, Superior Court Judge,* in Chambers, in Shelby, North Carolina, 11 September 1970.

Plaintiff instituted this action seeking to recover for personal injuries allegedly caused by defendants. In his complaint, plaintiff alleged that Dr. Miller had been treating him for a broken bone in his right arm; that an operation became

necessary and was performed in July 1968 by Dr. Miller in Gaston Memorial Hospital, Inc., (Hospital) ; that plaintiff was under a general anesthetic and totally unconscious while the operation was performed; and that when he became conscious again, he had a severe pain in his left arm which eventually caused a portion of his left hand to atrophy. An operation was later performed in December 1968 on the left arm in which the ulnar nerve was removed from its natural groove at the elbow and transplanted to a new location. Plaintiff alleged that he was unable to discover what happened to cause the injury but that Dr. Miller, his assistant, the nurses under his control, and the Hospital were negligent in that they permitted an injury to the ulnar nerve in the left arm of plaintiff.

Both defendants denied negligence in the performance of their duties and denied that anything had happened while plaintiff was anesthetized that could cause an injury to the ulnar nerve of plaintiff's left arm. Defendants then moved for summary judgment pursuant to Rule 56 of the North Carolina Rules of Civil Procedure and submitted in support of their motion eleven depositions taken by plaintiff and a deposition of plaintiff taken by defendants.

The depositions, taken by plaintiff, of Dr. Miller, his assistant, and the nurses who assisted in the treatment and care of plaintiff disclosed that none of the deponents had any knowledge of anything that happened while plaintiff was anesthetized that could cause injury to the ulnar nerve of plaintiff's left arm. None of the deponents had any knowledge or recollection of plaintiff complaining of pain in his left arm following the operation on his right arm in July 1968.

The deposition of the plaintiff, taken by defendants, revealed that plaintiff was not aware of anything that took place during the operation. After coming out from under the anesthetic plaintiff experienced pain in his left arm and so informed the nurses and doctors.

The trial judge granted defendants' motions for summary judgment and entered an order dismissing the action. From the order allowing defendants' motions for summary judgment and dismissing the action, plaintiff appeals to this Court.

*Smathers & Ferrell by James C. Smathers for plaintiff appellant.*

*Hollowell, Stott & Hollowell by Grady B. Stott for defendant Dr. George R. Miller; and Jonas & Jonas by Harvey A. Jonas, Jr., for defendant Gaston Memorial Hospital, Inc., defendant appellees.*

CAMPBELL, Judge.

Plaintiff assigns as error the granting of defendants' motions for summary judgment. Summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law." G.S. 1A-1, Rule 56(c).

Plaintiff alleges that he was injured due to the negligence of defendants or their agents, yet he states in his complaint that he does not know who caused the injury, how it happened, or when it happened, except that he alleges that it occurred while unconscious due to the anesthetic administered him. The depositions of Dr. Miller and those who assisted him in the operation failed to further clarify plaintiff's allegations of negligence. The depositions disclosed that none of the deponents had any knowledge of any occurrence that could have caused the injury complained of; nor did any of the deponents even know that an injury had occurred until sometime after the operation.

In the deposition of Dr. Miller, he stated:

" . . . It is correct to say that I know of nothing that occurred at the July 14th admission or during the operation or during the recovery room after the operation which produced or could have produced any injury to the ulna nerve in the left arm."

In December 1968 the plaintiff was again admitted and Dr. Miller testified:

" . . . I diagnosed his condition in my history and physical examination of December 8th admission as neuropathy of the ulna nerve on the left. The word neuropathy is a general term denoting functional disturbances and

changes, and, or pathological changes in the peripherical [*sic*] nervous system. The etiology is not necessarily from a traumatic injury. It could be an etiological factor. Ischemic neuropathy and arsenical neuropathy could be a cause. Diabetes could also be a cause.

When I operated on the ulna nerve on his admission of December 8, 1968, I found that the nerve was irritable and that it was imbedded in scar tissue. I removed it from the tissue in which it was imbedded. We are talking about the funny bone nerve. There is a sheath around the nerve. We transferred the sheath with the nerve, but took it out of the tight tissue in which it was lying. We did find that it was imbedded in scar tissue. The words adhesions and scar tissue are used pretty much synonomously but there are certain differences, I suppose, technically. I describe this as scar tissue. I did this, so to speak, advisedly, because that's what it looked like, as contra-distinguished from adhesions. When I think of an adhesion, I think more of a narrower band rather than a more extensive covering.

I suppose many things can cause scar tissue. One of the causes could be that the blood vessels in the area are broken and hemorrhage occurs. Scar tissue is a form of healing. You can have a blood vessel break and have healing without any scar tissue; you can also have one break and have scar tissue. That is correct but whether it comes from just the breaking of that or whether it comes from—it has got to be some type of tissue reaction, which is hard to explain, why one time you get trauma and another time, you don't. This could be described as a partial ulna nerve paralysis."

Dr. Miller concluded his deposition with the statement that he knew of nothing which could have caused the condition he found during the operation of December 1968. The record also discloses that the plaintiff was a diabetic.

The deposition of the plaintiff shows only that plaintiff had pain in his left arm when he awoke in the recovery room. It does not reveal any further information as to how the injury occurred.

"To warrant the submission of a malpractice case to the jury, there must be proof of facts or circumstances which permit a legitimate inference of actionable negligence on the part of the physician . . . . A showing of an injurious result is not enough. . . . " *Boyd v. Kistler,* 270 N.C. 744, 155 S.E. 2d 208 (1967).

In *Boyd v. Kistler, supra,* Justice Higgins, in affirming a judgment of nonsuit, went on to state:

" . . . By investigation, the plaintiff surely could have obtained evidence as to when and how the injury occurred and who caused it. No doubt the plaintiff's able counsel knew of their right to make inquiry by adverse examination of witnesses and the examination of documents."

Here, the plaintiff has taken advantage of the discovery procedures available and has still been unable to obtain evidence as to when and how the injury occurred and who or what caused it.

In fact, the record does not reveal that any injury in the nature of an inflicted harm occurred, and the condition of the plaintiff could just as well have been from a pathological cause.

In the absence of a showing that there was a genuine issue as to any material fact, summary judgment was appropriate. The order of the trial judge granting defendants' motions for summary judgment and dismissing the action is

Affirmed.

Judges BRITT and GRAHAM concur.