WILLIAM MARK STARNES, MINOR, BY HIS NEXT FRIEND, W. D. STARNES v. CHARLOTTE-MECKLENBURG HOSPITAL AUTHORITY AND DR. JAMES P. HAMILTON AND J. JOHNSON

No. 7526SC416

(Filed 4 February 1976)

1. Hospitals § 3— patient burned during surgery — no liability of hospital

In an action by plaintiff against defendants for damages for negligently burning him instituted prior to the N. C. Supreme Court decision abolishing the doctrine of charitable immunity, the applicable law was that a patient, paying or nonpaying, who was injured by the negligence of an employee of a charitable hospital could recover damages from it only if it was negligent in the selection or retention of such employee, or perhaps if it provided defective equipment or supplies; however, plaintiff's evidence was insufficient to require submission of an issue as to the hospital's negligence to the jury where there was no evidence that (1) a hot water bottle used to warm plaintiff during surgery was defective or that the bottle was not reasonably suited to warm infant patients during surgery, (2) the hospital was negligent in hiring and retaining certain personnel, (3) the hospital's publishing of a procedure manual which recommended 120° as the proper temperature for hot water bottles was a contributing factor to plaintiff's injury, or (4) the hospital was negligent in supplying an anesthetist instead of an anesthesiologist for the operation.

2. Physicians and Surgeons §§ 12, 16— warming procedure during surgery — responsibility of anesthetist — patient burned — sufficiency of evidence of negligence

In an action to recover damages for burns sustained by plaintiff during surgery, plaintiff's evidence as to negligence of the anesthetist

Starnes v. Hospital Authority

was sufficient to be submitted to the jury where it tended to show that the responsibility of warming the patient for the operation was that of the anesthetist, defendant Johnson, and that the warming procedure used during plaintiff's surgery resulted in the burns.

3. Physicians and Surgeons § 16— warming procedure during surgery — responsibility of anesthetist — patient burned — no negligence of surgeon

   Evidence was insufficient to be submitted to the jury on the issue of the negligence of defendant doctor who performed the operation during which plaintiff was burned by a hot water bottle used to keep him warm during the surgery, since the evidence showed that responsibility for the hot water bottle rested with the anesthetist and not the surgeon.

APPEAL by plaintiff from *Falls, Judge.* Judgment entered 28 January 1975 in Superior Court, MECKLENBURG County. Heard in the Court of Appeals 15 September 1975.

Plaintiff was born on 27 May 1966 at Charlotte Memorial Hospital. Seven days later plaintiff underwent emergency surgery to correct an intestinal obstruction. The operation was performed by Dr. James P. Hamilton, a pediatric surgeon. The anesthetic was administered by Miss Johnson, a registered nurse and trained anesthetist. It was necessary to warm the plaintiff during the operation because of the tendency of a newborn child to lose body temperature rapidly once he is rendered unconscious. The method used to warm plaintiff consisted of a hot water bottle covered by an inverted flash pan approximately 3 inches high, 18 inches long, and 12 inches wide. The pan served as the platform on which the surgery was performed. The circulating nurse filled the hot water bottle and put it under the pan. Miss Johnson, the anesthetist, placed lifters or several layers of cotton on top of the inverted flash pan. At approximately 5:00 p.m. the plaintiff was brought into the operating room, placed on the surface prepared by Miss Johnson and the circulating nurse, and covered by appropriate sheets. Immediately thereafter Dr. Hamilton entered the operating room and commenced the operation; it lasted two hours and ten minutes. Although the surgery corrected the intestinal blockage, plaintiff incurred a third degree burn on his backside, covering most of the surface area of his buttocks, during the operation. Plaintiff's evidence suggests that the hot water bottle used in the heating apparatus was filled with excessively hot water and caused the burn.

On 3 June 1969 plaintiff instituted this action against the Hospital, Miss Johnson (the anesthetist), and Dr. Hamilton for damages for negligently burning the plaintiff. At the close of plaintiff's evidence, each of the three defendants moved for directed verdict. The trial judge granted judgment of directed verdict as to each defendant, and from these judgments plaintiff appeals.

*John D. Warren, for the plaintiff.*

*Boyle, Alexander & Hord, by Richard H. Hicks, Jr., for the defendants, Charlotte-Mecklenburg Hospital Authority and J. Johnson.*

*Jones, Hewson & Woolard, by H. C. Hewson, for the defendant, Dr. James P. Hamilton.*

BROCK, Chief Judge.

When the defendant moves for a directed verdict after the presentation of plaintiff's evidence, the question presented for the court is whether the evidence, when considered in the light most favorable to the plaintiff, is sufficient for submission to the jury. *Sink v. Sink,* 11 N.C. App. 549, 181 S.E. 2d 721 (1971). Thus our sole task on review is to determine whether the trial judge properly decided this question with respect to each of the three defendants.

### DEFENDANT HOSPITAL

[1] In open court the parties agreed to the following stipulations: (1) that defendant Hospital is a non-profit institution to which the doctrine of charitable immunity applies; and (2) that plaintiff's claim is governed by North Carolina law prior to the decision of *Rabon v. Hospital,* 269 N.C. 1, 152 S.E. 2d 485 (1967), in which our Supreme Court abolished the doctrine of charitable immunity. Thus we are bound by pre-*Rabon* law and the doctrine of charitable immunity in our determination of whether a directed verdict was properly entered in favor of defendant Hospital.

Plaintiff's principal claim against the Hospital is based on the Hospital's duty "to furnish standard equipment and to make reasonable inspection and remedy any defects discoverable by such inspection." *Payne v. Garvey,* 264 N.C. 593, 142 S.E. 2d 159 (1965). While this form of corporate or administrative

negligence has never been affirmatively adopted in North Carolina, "[d]ecided cases indicate that the present state of the law in North Carolina is as follows: A patient, paying or nonpaying, who is injured by the negligence of an employee of a charitable hospital may recover damages from it only if it was negligent in the selection or retention of such employee (citations omitted), *or perhaps if it provided defective equipment or supplies* (citation omitted)." (Emphasis added.) *Rabon v. Hospital, supra.* We are convinced that the duty to provide safe and proper equipment is analogous to and equally compelling as the long-standing requirement that a charitable institution exercise due care in the selection and retention of its employees. *Williams v. Hospital,* 237 N.C. 387, 75 S.E. 2d 303 (1953). However, even if we recognize that the defendant Hospital can be held liable for injuries resulting from the use of defective equipment, plaintiff's evidence is insufficient to require the submission of this issue to the jury.

Plaintiff's evidence tends to show that the Hospital used hot water bottles to warm infant patients for surgery; that at the time of the operation a better, more controllable, and safer heating device—a K-thermal blanket—was available on the market and used by two other hospitals in Charlotte; and that according to a pediatric surgeon who testified as an expert witness for plaintiff, it was "bad medical practice" to use the hot water bottle method instead of the K-thermal blanket for the type of operation and patient involved in this case. Evidence that the K-therm device is "better" or "safer" does not prove that the hot water bottle was defective or unsafe. "[The hospital] is not required to furnish the latest or best appliances, or to incorporate in existing equipment the latest inventions or improvements even though such devices may make the equipment safer to use. An appliance is not defective by reason of the failure to have incorporated therein the latest improvement or invention developed for its use." *Emory Univ. v. Porter,* 103 Ga. App. 752, 120 S.E. 2d 668 (1961). At most, the hospital is required to furnish equipment which is reasonably suited for the purposes for which it is intended. Here, the injury resulted not from the defective nature of the hot water bottle, but from the manner in which it was prepared and applied. There is no evidence that the hot water bottle was defective or that it was not reasonably suited to warm infant patients in surgery. It had been used in the past with sufficient success to gain acceptance as a standard procedure. Had the hot water bottle been

prepared at the proper temperature, the evidence suggests that plaintiff would not have been injured. In conclusion we hold that plaintiff's evidence is insufficient to withstand defendant Hospital's motion for directed verdict on the issue of whether the Hospital was negligent in using the hot water bottle method instead of the K-thermal blanket.

Plaintiff also attempted to prove that defendant Hospital negligently hired and retained Dr. Montgomery, the director of the anesthesiology department at the time of plaintiff's operation, and Mr. Bondranko, the director of the Hospital's anesthesiology school where Miss Johnson, the plaintiff's anesthetist during the operation and a party in this case, received her training. There is absolutely no evidence to support this theory of liability. Although it is apparent that neither the anesthesiology department nor Hospital training program provided specific instruction on the preparation and use of hot water bottles, there is nothing in the evidence which suggests that these omissions amount to a breach of the duty of care imposed upon Dr. Montgomery and Mr. Bondranko in their respective capacities.

Plaintiff attempted to prove "corporate" or "administrative" negligence on the part of defendant Hospital for publishing a procedure manual which recommended 120° as the proper temperature for hot water bottles. Plaintiff's evidence tends to show that the maximum acceptable temperature of a hot water bottle to warm an infant patient during surgery is 105° and that 120° water in the bottle would burn the patient. However, there is no indication that the prescribed temperature in the manual was a contributing factor to plaintiff's injury or that the circulating nurse relied upon this information in preparing the hot water bottle used in plaintiff's operation. The testimony of Nurse Jordan, the person who prepared the bottle, contains no reference to the manual and indicates, at least by implication, that she knew 120° was too hot.

"There are several rooms together in an operating suite. It has a faucet in it and that is where I went to get the water hot for the bottle; I turned on the hot water spigot and I let it run as hot as it would get and then I turned on the cool water and let it run until I tested it on my arm and I thought it was right. I didn't spray it. When I felt it was the right temperature, whatever that was, I filled up the bottle. I didn't use a thermometer or

Starnes v. Hospital Authority

any other instrument to check the heat of the water, nothing other than my arm. I am sure that there is a thermometer somewhere in the operating room that I could have used. I am sure that they had plenty of thermometers in the hospital if I had wanted one. No kind of instrument was used to check the heat of the water, nothing but my arm, so I do not know what specific degree of temperature the water was. I knew what the water was going to be used for. I didn't know whether the child was one, two, three or four or how many days old. I knew it was a newborn baby.

. . . .

". . . I don't know where the water was heated that I got out of the spigot; I just know that it comes hot out of the tap. I don't know how hot it comes out of the tap, I don't know the degrees it gets hot, hot enough to steam. When I got it out, I don't recall that it was steaming. It may have been steaming to start with but not after I regulated it."

"From the standard procedure in such operations, some type of sheet is usually put over the pan, just an ordinary bed sheet. In my deposition, I was asked did I know what temperature that it took to blister the skin of a seven day old infant, and I said, 'No, sir.' Since then I have not learned what it would take to blister a seven day old infant. As to what temperature it takes to blister the skin of an adult, as to exact temperature, I don't know, but the range, I would say, would probably be 120 to 130 degrees, but I don't think that would blister them, but I think it would make them pretty hot, but I don't think water that wasn't hot on my arm would burn a child."

Finally plaintiff argues that the defendant Hospital was negligent in supplying an anesthetist instead of an anesthesiologist for the operation. Again the evidence fails to support this allegation. While an anesthesiologist might have greater expertise than an anesthetist due to more extensive training, this alone is insufficient to show that the Hospital was negligent in employing Miss Johnson, an anesthetist, to administer the anesthetic to plaintiff during the operation. Plaintiff's assignment of error to the directed verdict for defendant Hospital is overruled.

### DEFENDANT JOHNSON

[2]   Plaintiff assigns error to the directed verdict for defendant Johnson, the anesthetist at plaintiff's operation. Plaintiff's evidence tends to show that it was the duty of the department of anesthesiology, through the anesthesiologist or the anesthetist assigned for the operation, to warm the patient for and during the operation. In this operation the infant was to be warmed and kept warm to prevent the patient from losing body temperature and entering shock. Although the evidence tends to show that the circulating nurse is responsible for setting up the operating room properly, and that in this case the circulating nurse actually filled the hot water bottle that is alleged to have burned the infant, the evidence further tends to show that the anesthesiologist or the anesthetist at times fills the hot water bottle; furthermore, when the circulating nurse fills it, she turns it over to the department of anesthesiology.

Plaintiff's evidence bearing upon the question of responsibility for the temperature of the hot water bottle is conflicting. It is understandably conflicting because plaintiff, of necessity, relied largely upon the testimony of the hospital and operating room personnel. Albeit the testimony described the filling of the hot water bottle as a "team effort," i.e., whoever arrived first and had the time, we think the evidence tends to show the responsibility of warming the patient for the operation to be that of the anesthetist, defendant Johnson. This evidence would permit the jury to draw the reasonable inference that in order to fulfill the responsibility of warming the patient, the anesthetist was responsible for either filling the hot water bottle with water of proper temperature or making certain that the hot water bottle was so filled. In our opinion the question was one for resolution by the jury and not by the court. We hold that plaintiff's evidence was sufficient to require submission to the jury of the issue of negligence on the part of the anesthetist, defendant Johnson, and that a directed verdict for defendant Johnson was error.

### DEFENDANT DR. HAMILTON

[3]   Plaintiff's third and final assignment of error pertains to the directed verdict entered in favor of Dr. Hamilton, the doctor who performed the operation during which plaintiff was burned. First plaintiff contends that Dr. Hamilton had *respondeat superior* liability for the negligent acts of Miss Johnson,

the anesthetist. We find no evidence to support this argument. The department anesthesiology assigned the anesthetist for the operation. Dr. Hamilton had no responsibility for her training or assignment. Absent some conduct or situation that should reasonably place the surgeon on notice of negligent procedure, we think the surgeon is entitled to rely on the expertise of the anesthetist. We find nothing to support general *respondeat superior* liability on the part of the surgeon.

Next plaintiff argues that Dr. Hamilton was negligent in failing to inspect the temperature of the hot water bottle either before or during the operation. Dr. Hamilton testified that on previous occasions he had requested the K-thermal device and was explicitly denied the use of this device by the Hospital. While this testimony reflects a preference for the K-thermal device, it is insufficient by itself to show that Dr. Hamilton had a duty, in the exercise of reasonable care as plaintiff's surgeon, to inspect the hot water bottle and insure that it was filled at the proper temperature. Indeed all of the evidence tends to show that it was neither customary nor feasible for Dr. Hamilton to inspect this particular facet of preparing the operating room for surgery. Such an inspection would likely destroy the surgeon's prior efforts to render himself aseptic for the operation.

Finally plaintiff asserts that Dr. Hamilton was negligent in failing to request an anesthesiologist in place of the anesthetist. We find no evidence to support this argument, and we conclude it is without merit.

The result is this:

Directed verdict for defendant Hospital is affirmed.

Directed verdict for defendant Dr. Hamilton is affirmed.

Directed verdict for defendant Johnson is reversed and a new trial ordered.

Judges VAUGHN and MARTIN concur.