DENNIS B. RUSSELL v. SAM SOLOMON COMPANY

No. 8012SC297

(Filed 7 October 1980)

1. **Evidence § 33– testimony not hearsay**
   In an action to recover for injuries received by plaintiff from a glass display counter in defendant's store, a witness's testimony that an employee

Russell v. Sam Solomon Co.

of defendant showed him a counter and "said that is the one that broke and that [plaintiff] got cut on" was not objectionable hearsay but was admissible as a part of the operative conduct itself offered for its own sake and not as evidence of the truth of any statement made; furthermore, such testimony was also admissible for the purpose of corroborating plaintiff's testimony that defendant's courtroom exhibit was not an accurate replica of the counter which injured him.

2. **Negligence § 31– shattering of glass display shelf — res ipsa loquitur**

 The doctrine of *res ipsa loquitur* applied to provide an inference of negligence by defendant in an action to recover for injuries received by plaintiff when a glass display shelf in defendant's store shattered where plaintiff's evidence tended to show that the display was under defendant's control; no one else was present when the injury occurred so only plaintiff could testify as to how it happened; the shelving instantaneously "gave way" as plaintiff placed his hand upon it; plaintiff did not lean upon the glass shelf and exerted only minimal pressure upon it; and the broken shelf was not presented by defendant at any time for testing and was discarded after the accident.

APPEAL by plaintiff from *Braswell, Judge.* Judgment entered 23 October 1979 in Superior Court, CUMBERLAND County. Heard in the Court of Appeals 18 September 1980.

Plaintiff sued for injuries received from a glass display counter in defendant's store. At the conclusion of plaintiff's evidence on negligence, the court granted defendant's motion for a directed verdict.

On 15 June 1976, plaintiff, with his wife and some friends, went to defendant's store in Fayetteville to look for a canasta tray. They dispersed into different departments to find this item. Plaintiff asked a clerk in the camera department about a tray and then walked over to the next area, the cosmetic department. There were no store employees there. Only plaintiff could testify as to how the accident happened.

 (Indicating) Exactly what I did was to place my hand upon the glass counter so as not to disturb the articles that were displayed on it. There were men's cologne placed on it at the time I walked up to it. As I approached the counters and placed my hand right here (indicating on shelf) so that I wouldn't disturb anything, and looked into the inside, because the small racks were very difficult to see, and as I was standing there looking at it, this thing gave way. As to what I actually did I placed my hand here about like I am doing now (indicating on shelf) and looked inside. I exerted

Russell v. Sam Solomon Co.

minimal force upon my hand as I sat it down upon that shelf. I did not lean or in any way rest upon the shelf. As I stood there with my hand on the shelf, the shelf caved in. I felt pain — instant pain in my arm and then as I pulled my arm back away from the counter, it was gushing blood then. (Witness was instructed to be seated). Before I felt pain, I did not feel the shelf do anything, it was instantaneous. I heard crashing noises as everything was going; but again, it was instantaneous. I moved my arm away and in the process of moving, the shelves sliced into my wrist. ... At that point we started moving away — the parties with me, and some store people came over at this point including Mr. Nichols. Mr. Nichols is the gentleman seated in the back in the glasses. I did not see anyone else that I recall at this time. If these are employees, I don't recognize or recall any female people being there. I remember Mr. Nichols and some other men there. At that point we went to the right front of the building which is by the restrooms where they have a little table, like a small lounge there; and someone in the store called an ambulance or rescue team to come over. In the meantime, I gave them some information as to whatever they were asking. ...

On cross-examination, plaintiff denied that he had drunk any type of whiskey before entering the store. He further stated:

I did not come up to a display case similar to that [defendant's courtroom exhibit]. I did not come up initially and put my right hand there in an attempt to look at some items that were on the back side. ... I did not take my right hand and lean on the shelf of the counter and did not lean over the counter and put my hand there to catch my balance.

Plaintiff then demonstrated how he placed his hand on the counter using the one defendant had brought to the courtroom. Nevertheless, he explained the difficulty in doing so since defendant's exhibit was not like the display counter which had injured him. He also said that he had not seen any signs like "please do not lean on the counter."

Tommy Underwood, an investigator, was called as a witness for plaintiff. He said that he went to defendant's store in early July 1976 and had a conversation with a store employee,

William Nichols. Underwood requested Nichols to show him something. The rest of Underwood's testimony was taken by voir dire examination. He testified that Nichols took him to the cosmetics counter and showed him some glass shelving. Underwood said this shelving was not like the counter top entered as defendant's exhibit and described it as being loose, movable and unsecured. He stated that he did not see the actual shelving that injured plaintiff because Nichols told him it had been cleaned up and thrown away. Defendant objected to "any testimony by this witness on any conversation he had with Mr. Nichols as being incompetent and hearsay." The court sustained defendant's objection, and Underwood was not allowed to give this testimony before the jury.

*James R. Nance, Jr., for plaintiff appellant.*

*Anderson, Broadfoot and Anderson, by Henry L. Anderson, Jr., for defendant appellee.*

VAUGHN, Judge.

Two issues are brought for our review: whether Underwood's testimony concerning the statements and actions of defendant's employee should have been excluded and whether a directed verdict should have been granted to defendant. We answer both questions in the negative and reverse.

The following portions of Underwood's testimony were especially relevant to plaintiff's case:

> The shelving I was shown was not a counter top as this. It was just open on the front and back. It was only three shelves on it when I saw it. It was glass shelving. . . . Of course, the top piece was missing or one of the shelves was missing. As to what I did with regard to the shelving I was shown, I put my hand on the shelving and it was loose. . . . The shelving was not secured in any manner. It was not clamped on. It was inlaid with a bracket but it was not clamped down. At the time I touched it, it was loose. You could move it back end to end and it was moveable. It was not tight, secure.

After reviewing his notes, Underwood further testified that Nichols had shown him the counter and "said that is the one that broke and that Dr. Russell got cut on."

This was not objectionable hearsay. Underwood's testimony as to what Nichols said as he showed him the counter was admissible as "a part of the operative conduct itself ... offered for [its] own sake and not as evidence of the truth of any statement made ... ." 1 Stansbury, N.C. Evidence, § 159, at 534 (Brandis rev. 1973). It is unnecessary to consider whether Nichols' statement meets all the requirements for an admission of an agent against his principal. "[A] statement accompanying an act is admissible *either for or against* the principal ... when the statement characterizes or qualifies the act, in which case it would be so admissible without regard to any question of agency, under one of the so-called *res gestae* principles." 2 Stansbury, *supra*, § 169, at 18-19.

Underwood's testimony was also admissible for the purpose of corroborating plaintiff's testimony that defendant's courtroom exhibit was not an accurate replica of the counter that injured him. Plaintiff's argument at trial for admission was, therefore, entirely correct:

> This man can testify to what he saw and observed. Now, this display case has been brought in and has sat here before the jury and Dr. Russell has been cross examined with regard to this display case; and, I think, that we can show through this witness that he approached an employee of the company who was present at the time the incident occurred and that he asked him to show him the area and the display case that was involved in this particular thing; and that he was shown a particular object and that it was not this particular case and I think that is proper at this point.

In addition, Underwood's description of the counter he was shown was relevant evidence tending to support an inference of defendant's negligence. Thus, it was prejudicial error to exclude Underwood's testimony.

[2] We also agree with plaintiff's second contention that the doctrine of *res ipsa loquitur* should have been applied to the facts of this case. *Res ipsa* applies when direct proof of the cause of an injury is not available, the instrumentality involved in the accident is under the defendant's control, and the injury is of a type that does not ordinarily occur in the absence of some negligent act or omission. *Snow v. Power Co.*, 297 N.C. 591, 256

S.E. 2d 227 (1979); Restatement (second) of Torts, § 328 D (1965). *Res ipsa* may not, however, be used to infer negligence from the mere fact of an accident or injury. *O'Quinn v. Southard*, 269 N.C. 285, 152 S.E. 2d 538 (1967).

On this appeal, we must consider plaintiff's evidence as true, viewing it in the light most favorable to him with the benefit of every reasonable inference. *Summey v. Cauthen*, 283 N.C. 640, 197 S.E. 2d 549 (1973). His evidence tended to show the following. He was injured by a display counter which was under defendant's control. No one else was present when the injury occurred so only plaintiff could testify as to how it happened. He stated the shelving "gave way" as he placed his hand upon the shelf and that it was "instantaneous." The broken shelving was not presented by defendant at any time for testing or examination. It was discarded after the accident. Direct proof of the cause of the counter's collapse was, therefore, unavailable at trial. Nevertheless, in the ordinary course of things, a display counter does not shatter when one places his hand on it exerting only minimal pressure. *See Young v. Anchor Co., Inc.*, 239 N.C. 288, 79 S.E. 2d 785 (1954) (escalator suddenly jerked, stopped and quickly moved forward); *Page v. Sloan*, 12 N.C. App. 433, 183 S.E. 2d 813, *affd.*, 281 N.C. 697, 190 S.E. 2d 189 (1972) (explosion of an electric water heater).

A directed verdict can be granted only when plaintiff's evidence, as a matter of law, is insufficient to justify a verdict in his favor. *See* G.S. 1A-1, Rule 50. One of defendant's grounds for a directed verdict was that plaintiff's evidence failed to disclose any actionable negligence. We do not agree. *Res ipsa loquitur* provided an inference of defendant's negligence sufficient to authorize, but not compel, a verdict for plaintiff. *Lentz v. Gardin*, 294 N.C. 425, 241 S.E. 2d 508 (1978). Therefore, it was error to grant a directed verdict to defendant on that ground. *Husketh v. Convenient Systems*, 295 N.C. 459, 245 S.E. 2d 507 (1978); *McPherson v. Hospital*, 43 N.C. App. 164, 258 S.E. 2d 410 (1979). Defendant also requested a directed verdict on the ground that plaintiff was contributorily negligent. Plaintiff's evidence was that he did not lean upon the shelf and that he exerted only minimal pressure upon it. This does not disclose contributory negligence as a matter of law.

The judgment appealed from is reversed.

Reversed.

Judges MARTIN (Robert M.) and WEBB concur.