BETTY LEDFORD PARKS AND JOHNNY A. PARKS v. H. B. PERRY, JR., FRANKLIN B. WILKINS, LOUISE GODWIN, AND HUGH CHATHAM MEMORIAL HOSPITAL

No. 8323SC630

(Filed 1 May 1984)

1. **Physicians, Surgeons, and Allied Professions §§ 12, 16— nerve damage to arm while under general anesthesia—negligence of nurse anesthetist—applicability of res ipsa loquitur**

    In a medical malpractice action in which a plaintiff sought to recover for nerve damage in her right arm which she alleged occurred during surgery for

a hysterectomy, the trial court erred in granting defendant nurse anesthetist's motion for summary judgment. Plaintiffs met their burden of proving the applicability of the doctrine of *res ipsa loquitur* since (1) there was no direct proof of the cause of the injury available to the plaintiff or the defendant, and (2) the defendants admit that the instrumentality involved, positioning and monitoring the female plaintiff's arms, was under the defendant nurse anesthetist's control. With the benefit of the inference of negligence which the doctrine of *res ipsa loquitur* provides, there remained a genuine issue of fact for the jury with respect to the nurse's liability.

**2. Physicians, Surgeons, and Allied Professions § 16.1— insufficiency of evidence of negligence of assistant surgeon in medical malpractice action**

In a medical malpractice action in which the female plaintiff suffered nerve damage in her arm following surgery for a hysterectomy, the trial court properly granted summary judgment for an assistant surgeon since the surgeon could not be held liable if he had no duty to inspect the position of the patient's arms or to supervise the nurse anesthetist's work, and there was no evidence that the assistant surgeon had such a duty.

**3. Hospitals § 3.2— liability of hospital for negligence of nurse anesthetist — summary judgment improper**

In a medical malpractice action, the trial court erred by granting the defendant-hospital's motion for summary judgment where there was a genuine issue of fact as to the hospital's liability for the negligence of a nurse anesthetist on agency principles.

APPEAL by plaintiffs from *Collier, Judge.* Order entered 18 January 1983 in Superior Court, WILKES County. Heard in the Court of Appeals 9 April 1984.

*Frye, Booth, Porter & Van Zandt by John P. Van Zandt, III, for plaintiff appellants.*

*Bell, Davis & Pitt by William Kearns Davis and Joseph T. Carruthers for defendant appellee, Franklin B. Wilkins.*

*Womble, Carlyle, Sandridge & Rice by Jimmy H. Barnhill and Richard T. Rice for defendant appellee, Louise Godwin.*

*Harris, Cheshire, Leager & Southern by F. Stephen Glass and Claire L. Moritz for defendant appellee, Hugh Chatham Memorial Hospital.*

BRASWELL, Judge.

Betty Parks awoke after surgery with a numb little finger and a partially numb ring finger on her right hand. Mrs. Parks and her husband, who has also sued for loss of consortium, con-

tend that she suffered severe ulnar nerve damage in her right arm at the level of the elbow due to the negligence of Dr. H. B. Perry, Jr. (Chief Surgeon), Dr. Franklin B. Wilkins (Assistant Surgeon), Louise Godwin (Nurse Anesthetist), and the Hugh Chatham Memorial Hospital. Following discovery, each defendant filed a motion for summary judgment which was granted by the trial court. The plaintiffs have resolved all matters against the defendant, Dr. H. B. Perry, Jr., and have filed a voluntary dismissal of their action against him. The plaintiffs appealed from the summary judgment motions granted in favor of the remaining three defendants.

On 30 September 1979, Betty Parks was admitted to the Hugh Chatham Memorial Hospital in Elkin, North Carolina, under the care of Dr. H. B. Perry, Jr. The next morning, Dr. Perry, with Dr. Wilkins assisting, performed a vaginal hysterectomy on Mrs. Parks. She was placed under general anesthesia and in the lithotomy position by Louise Godwin, the nurse anesthetist.

The plaintiff's evidence showed that immediately prior to her operation on 1 October 1979 Mrs. Parks had no neurological defects in her right fingers, hand, wrist, arm, and in particular, had no damage to her right ulnar nerve. However, on 2 October 1979, during her first moments of consciousness after the surgery, Mrs. Parks experienced numbness and weakness in the fourth and fifth fingers of her right hand. Mrs. Parks repeatedly told Dr. Perry and the nurses about the numbness in her hand. Dr. Perry stated that it would eventually go away. When the numbness did not disappear, Mrs. Parks was referred to several other doctors who determined that she had suffered ulnar nerve damage in her right arm at the elbow. Further surgery was performed by Dr. William Brown, a neurosurgeon, on 12 December 1979, but the damage could not be corrected.

As a result of this damage to her ulnar nerve, several muscles in Mrs. Parks' right hand have deteriorated so that she is unable to use her fourth and fifth fingers, causing her great difficulty in gripping objects and in writing. Because of the permanent damage to her hand, Mrs. Parks could not return to her job with Central Carolina Telephone.

The plaintiffs contend that the permanent injury to Mrs. Parks' ulnar nerve was sustained during the vaginal hysterecto-

my. The plaintiff's expert witness, Dr. Edward Hayes Camp, testified that in his opinion Mrs. Parks' injury which caused the partial paralysis in her right hand occurred during the 1 October 1979 operation due to improper positioning or monitoring of her right arm by the nurse anesthetist.

The defendant Godwin contends that because the plaintiffs' entire case rests upon expert testimony it is insufficient as a matter of law to create an inference of actionable negligence. The defendant Wilkins argues that summary judgment in his favor was proper because the evidence shows he took no part in positioning the patient and had no duty to inspect her arm position. The defendant-hospital asserts that the plaintiffs have produced no evidence sufficient to show it was guilty of actionable negligence or that Nurse Godwin and Dr. Wilkins were agents of the hospital.

The sole question presented for our review is whether the trial court erred in granting summary judgment in favor of the defendants. Summary judgment is proper, according to G.S. 1A-1, Rule 56, when the movant establishes " 'that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.' " *Easter v. Hospital,* 303 N.C. 303, 305, 278 S.E. 2d 253, 255 (1981), *quoting Vassey v. Burch,* 301 N.C. 68, 72, 269 S.E. 2d 137, 140 (1980). In *Easter,* also a medical malpractice action, the Supreme Court recognized the general rule that only in exceptional negligence cases is summary judgment appropriate. *Id.*

[1]  We begin our discussion with the alleged liability of the defendant-nurse, Louise Godwin, because, as this defendant concedes, if negligence occurred then she is the primary tortfeasor. Nurse Godwin contends that the plaintiffs have offered no evidence of actionable negligence, except that which might be inferred from the doctrine of *res ipsa loquitur.* Generally, "[r]es ipsa applies when direct proof of the cause of an injury is not available, the instrumentality involved in the accident is under the defendant's control, and the injury is of a type that does not ordinarily occur in the absence of some negligent act or omission." *Russell v. Sam Solomon Co.,* 49 N.C. App. 126, 130, 270 S.E. 2d 518, 520 (1980), *disc. rev. denied,* 301 N.C. 722, 274 S.E. 2d 231 (1981). In her brief Nurse Godwin claims that "[t]he only types of

malpractice cases in which the doctrine of *res ipsa* has been ap-
plied in North Carolina are either 'foreign object' cases or cases
in which there is manifest such an obviously [*sic*] gross want of
care and skill as to afford, of itself, an almost conclusive inference
of negligence." *See Pendergraft v. Royster*, 203 N.C. 384, 393, 166
S.E. 285, 289-90 (1932). The reason given for the doctrine's limited
availability is the principle that a health care provider is not an
insurer of results and that no presumption of negligence can arise
from the mere fact of an accident or injury. *Mitchell v. Saunders*,
219 N.C. 178, 182, 13 S.E. 2d 242, 245 (1941); *see also Russell*,
*supra*, at 131, 270 S.E. 2d at 520. However, the North Carolina
Supreme Court has long recognized that

> where proper inferences may be drawn by ordinary men
> from proved facts which give rise to *res ipsa loquitur* without
> infringing this principle, there should be no reasonable argu-
> ment against the availability of the doctrine in medical and
> surgical cases involving negligence, just as in other negli-
> gence cases, where the thing which caused the injury does
> not happen in the ordinary course of things . . . .

*Mitchell, supra.* In *Pendergraft, supra*, at 393, 166 S.E. at 289, the
Court recognized the doctrine's importance " '*where the injury is*
*received while the patient is unconscious . . . because under such*
*circumstances the patient would not be able to testify as to what*
*had happened, whereas the physician could.*' " (Citation omitted.)

The test of the applicability of *res ipsa loquitur* in medical
malpractice cases is twofold: (1) the injurious result must rarely
occur standing alone and (2) the result must not be an inherent
risk of the operation. 61 Am. Jur. 2d, *Physicians, Surgeons, and
Other Healers* § 333 (1981). With regard to the test's first prong
the plaintiffs' expert witness, Dr. Edward Hayes Camp, in his
deposition testified after reviewing all of Mrs. Parks' hospital
records and those records made by the consultants who later ex-
amined her that in his opinion Mrs. Parks' paralysis was caused
by pressure to her ulnar nerve occurring during the course of the
hysterectomy. He further stated that although there was nothing
Mrs. Parks could have done to prevent or avoid the injury, the in-
jury could have been prevented by proper positioning and main-
tenance of the arm's position during the operation. Nurse Godwin
conceded that it was her responsibility to position and monitor

Mrs. Parks' arms. Dr. Camp also explained that this injury does not occur by itself, for instance by falling asleep on one's arm. He stated that it only occurs when one is completely unconscious and prolonged pressure of a constant nature is applied to a certain small vulnerable area. A sleeping patient, or any person for that matter, is caused sufficient discomfort from the lack of circulation in the limb to cause him to move his arm and remove the pressure. Likewise, a patient after an operation whose arms are no longer bound in one position does not lie absolutely still in the normal course of recovery from general anesthesia, but turns from side to side relieving any harmful pressure on this nerve.

The second prong of the test requires that the injurious result not be an inherent risk of the operation. Both Dr. Camp and Nurse Godwin stated that although this type of nerve damage is a possibility in any operation where general anesthesia is used, it is not common and not a particular hazard in gynecological surgery. Dr. Camp explained that the major risk peculiar to a vaginal hysterectomy is placing the patient in the lithotomy position which, if improperly done, can cause nerve damage to the lower legs.

Thus, both prongs of this test to determine the applicability of *res ipsa loquitur* in malpractice cases have been satisfied. There is also sufficient evidence to support the remaining two traditional elements of the *res ipsa* doctrine. First of all, there is no direct proof of the cause of the injury available to the plaintiff. The only evidence that Mrs. Parks can testify to is that before the general anesthesia she had a healthy functional right hand, yet after the operation she awoke with numb fingers as a result of damage to her ulnar nerve. Similarly, neither Nurse Godwin nor the other defendants can offer direct evidence as to how the injury occurred. Secondly, the defendants admit that the instrumentality involved, positioning and monitoring Mrs. Parks' arms, was under the defendant Godwin's control. We hold therefore that the use of *res ipsa loquitur* in this case is justified. With the benefit of this inference of negligence, there remains a genuine issue of fact for the jury with respect to Nurse Godwin's liability. We hold the trial court improperly granted summary judgment in Nurse Godwin's favor.

[2]   The liability of Dr. Wilkins, the assistant surgeon, however, is another matter. There is no evidence in the record before us that Dr. Wilkins had a duty to inspect or monitor the position of the patient's arms. Even if such evidence existed, the law does not impose such a duty on the chief surgeon, much less the assisting surgeon. *Starnes v. Hospital Authority*, 28 N.C. App. 418, 221 S.E. 2d 733 (1976). The plaintiffs' expert, Dr. Camp, testified that the assisting surgeon stays down at the base of the operating table with the Chief Surgeon during a vaginal hysterectomy. Thus, because of the operating drape, he would not have the opportunity or the duty to inspect the patient's upper body, including the arms. Dr. Camp stated that the responsibility for the patient's arms rests with the nurse anesthetist who positions and monitors the arms. Dr. Camp further stated that the assisting physician has no role or duty with respect to the patient in the post-operative follow-up. Even with *res ipsa* supplying the requisite degree of proof of negligence to create a jury question, Dr. Wilkins cannot be held liable if he had no duty to inspect the position of the patient's arms or to supervise Nurse Godwin's work. We hold that summary judgment in Dr. Wilkins' favor was properly granted.

[3]   Finally, we hold the trial court erred by granting the defendant-hospital's motion for summary judgment. From the record before us, we believe there is a genuine issue of fact as to the hospital's liability on agency principles. In Nurse Godwin's answer, she admits that she "may have been an agent, servant, or employee of one or more of the other defendants." In her deposition, however, Nurse Godwin states that her relationship with the hospital was that of an independent contractor for Latipac, Inc. She asserted that "I considered myself hired by Latipac to perform a contractual job on a day-to-day basis." Whether or not Nurse Godwin was an independent contractor or an agent for the hospital is yet to be determined. In turn, whether the hospital is liable under the theory of *respondeat superior* is also a genuine issue of fact to be decided by the jury.

The defendants contend that *Hoover v. Hospital, Inc.*, 11 N.C. App. 119, 180 S.E. 2d 479 (1971), a case denying recovery to a plaintiff who also suffered nerve damage in his arm while unconscious from anesthesia during surgery, should control. This Court held in *Hoover* that summary judgment in favor of the

defendants doctor and hospital was proper because "the plaintiff has taken advantage of the discovery procedures available and has still been unable to obtain evidence as to when and how the injury occurred and who or what caused it." *Id.* at 123, 180 S.E. 2d at 482. This case is distinguishable from the present case because Mr. and Mrs. Parks through their expert witness did offer evidence tending to show that the injury occurred during the hysterectomy due to the mispositioning of Mrs. Parks' right arm by Nurse Godwin. Therefore, we hold that summary judgment as to defendants Godwin and the Hugh Chatham Memorial Hospital is

Reversed.

Summary judgment granted in favor of the defendant Wilkins is

Affirmed.

Chief Judge VAUGHN and Judge EAGLES concur.