DIANE KIRBY ELLIOTT, Plaintiff v. DR. KENNETH D. OWEN; KENNETH
D. OWEN, P.A.; DR. W. JOSEPH PORTER; DR. ROBERT A. HERRIN;
AND PORTER, BARTS, HERRIN AND KIRK, P.A., Defendants

No. 8926SC1072

(Filed 17 July 1990)

1. **Physicians, Surgeons, and Allied Professions § 17.4 (NCI3d) — dental malpractice — breach of standard of care — evidence insufficient**

   Plaintiff in a dental malpractice action failed to show that a genuine issue of material fact existed concerning defendants' breach of the applicable standard of care where plaintiff alleged negligence in pre-operative orthodontic treatment, surgery to correct a malalignment of her jaws, and post-operative treatment; defendants submitted affidavits stating that they had conformed to the standard of care in their community; and plaintiff in response submitted an affidavit in which she alleged that defendant Dr. Porter failed to tell her that she needed immediate treatment to avoid movement of her teeth and an affidavit from the orthodonist who subsequently treated plaintiff which did not mention the standard of care with respect to this case. Plaintiff failed to show that a genuine issue of material fact exists concerning whether defendants had breached the applicable standard of care in their treatment of plaintiff, including post-operative care.

   **Am Jur 2d, Physicians, Surgeons, and Other Healers §§ 312, 357.**

2. **Physicians, Surgeons, and Allied Professions § 17.4 (NCI3d) — dental malpractice — res ipsa loquitur — summary judgment for defendant proper**

   There were no significant issues of fact regarding the applicability of the doctrine of res ipsa loquitur in a dental malpractice action where there was ample evidence that relapse was an inherent risk of this type of surgery and that at the earliest detection of movement of her teeth plaintiff was urged to return to defendant Owen to treat the relapse and prevent further movement.

   **Am Jur 2d, Physicians, Surgeons, and Other Healers § 335.**

3. **Physicians, Surgeons, and Allied Professions § 17.4 (NCI3d) — dental malpractice—informed consent—failure to raise**

A contention regarding plaintiff's informed consent in a dental malpractice action was not properly before the Court of Appeals where plaintiff failed to raise the contention either in her complaint or otherwise before the trial tribunal.

**Am Jur 2d, Physicians, Surgeons, and Other Healers §§ 187, 326.**

Judge WELLS concurring.

APPEAL by plaintiff from order entered 19 June 1989 by *Judge Frank W. Snepp, Jr.* in MECKLENBURG County Superior Court. Heard in the Court of Appeals 10 April 1990.

This is a medical malpractice action brought against a dentist, Dr. Kenneth D. Owen, and two oral surgeons, Drs. W. Joseph Porter and Robert A. Herrin and their respective professional associations. This is the second action brought by plaintiff against defendants. Plaintiff dismissed the first action and subsequently filed this suit in September 1987.

Prior to 1 May 1981, plaintiff suffered from severe and chronic headaches and was advised by her physician to schedule an appointment with defendant Porter to determine if the headaches were related to her jaw or other orthodontic or maxillofacial problem. On or about 1 May 1981, plaintiff was examined by defendant Porter who informed her that she was suffering from mandible joint syndrome. Plaintiff had a Class III malocclusion which is a condition in which the lower teeth are too far forward in relation to the upper teeth. Also, the arc of plaintiff's upper teeth was not compatible with the arc of her lower teeth. During the meeting, defendant Porter informed plaintiff that she needed braces in order to properly position her teeth before he could operate to correct the malalignment of her jaw. Plaintiff was then referred to defendant Owen for the necessary orthodontic treatment. Plaintiff was treated by defendant Owen from May 1981 through October 1982. Owen had plaintiff wear orthodontic braces until the arc of her upper and lower teeth was sufficiently compatible and fit together properly enough to permit surgery.

On or about 18 October 1982, plaintiff was admitted to Presbyterian Hospital for surgery. Initially, surgery was planned

ELLIOTT v. OWEN

[99 N.C. App. 465 (1990)]

only on plaintiff's lower jaw but defendants Owen and Porter decided on the night prior to the scheduled surgery to operate on both jaws. Prior to surgery, plaintiff was informed that surgery would be done on the upper jaw as well. Dr. Owen prepared a surgical prescription which involved movement of both jaws, model surgery for movement of the lower jaw only and model surgery for movement of both the upper and lower jaws, and surgical splints. On or about 19 October 1982 defendant Porter and defendant Herrin acting allegedly at the direction of defendant Owen performed a maxillal three phase osteotomy and bilateral sagittal split osteotomy which involved moving plaintiff's lower jaw backward 7 to 10 millimeters and tilting plaintiff's upper teeth backward. Following surgery plaintiff's jaws were wired shut for approximately nine weeks.

After discharge from the hospital, plaintiff saw defendant Porter for several follow-up visits. During the initial visits, plaintiff's jaws were allegedly in the position called for by the surgical prescription. Defendant Porter began to notice some movement in plaintiff's jaws around 15 November 1982. Approximately 29 November 1982 defendant Porter referred plaintiff to defendant Owen for orthodontic treatment because there appeared to be some slight movement in her jaws. On or about 20 December 1982, after defendant Porter removed the surgical splint, both defendants Porter and Herrin noticed some movement of the maxilla in relation to the position of the mandible. Defendant Porter then gave plaintiff the surgical splint and directed her back to defendant Owen for his (Owen's) evaluation of whether continued use of the splint was advisable and whether orthodontic treatment could correct plaintiff's problem. At this time defendant Porter allegedly conferred with defendant Owen over the telephone concerning plaintiff's problem and indicated that plaintiff would be coming up to see defendant Owen. Defendant Porter saw plaintiff once again on 30 December 1982. At that time plaintiff did not have her splint in place.

On or about 7 January 1983, plaintiff saw defendant Owen who determined that the mandible had moved forward to within two millimeters of where it was originally and the upper jaw or maxilla had moved forward approximately five millimeters. Plaintiff received orthodontic treatment from defendant Owen through approximately 21 March 1983. On or about 11 March 1983 defendant Owen told plaintiff that she had the following three choices regarding her lower jaw: (1) remove the appliances; (2) remove two teeth

and bring the lower front teeth back; or (3) go through surgery again. On 21 March 1983, defendant Owen advised plaintiff that ideally she needed surgery on both the upper and lower jaws again. Plaintiff saw defendant Porter again on 11 April 1983. Defendant Porter recommended that plaintiff return to defendant Owen but plaintiff refused. Plaintiff was eventually treated orthodontically by Dr. John Edwards and underwent further surgery to correct the position of her jaws.

Plaintiff brought this action against defendants alleging in her complaint that "[a]s a direct and proximate result of the complications following the afore alleged surgery, Plaintiff was required to undergo additional orthodontic treatment which culminated in corrective surgery which was performed on or about August 20, 1984." Plaintiff further alleged that the subsequent treatment was a direct and proximate result of the joint and several negligence of defendants Owen, Porter and Herrin in rendering orthodontic and surgical treatment not in accordance with the "standards of practice among members of the same health care professions with similar training and experienced [sic] situated in the same or similar communities" in doing the following: (a) defendant Owen negligently advised unnecessary orthodontic treatment prior to surgery; (b) defendants Owen, Porter, and Herrin jointly and severally decided to do additional surgery on plaintiff's upper jaw without adequately planning and preparing for additional surgery; (c) defendant Owen negligently and incorrectly prepared a surgical splint to be used during surgery to position plaintiff's jaw; (d) defendant Owen negligently instructed operating physicians on the procedures to be performed on plaintiff; (e) defendants Porter and Herrin failed to adequately prepare for surgical procedures on plaintiff; (f) defendants Owen and Porter failed to provide adequate and proper follow-up care; (g) defendants Owen, Porter, and Herrin were otherwise careless and negligent. As a result, plaintiff sought compensatory damages, costs, and reasonable attorney's fees.

Defendants moved for summary judgment and the trial court granted their motions. Plaintiff appeals.

*Collie and Wood, by James F. Wood, III, for plaintiff-appellant.*

*R. C. Carmichael, Jr. for defendant-appellees Kenneth D. Owen and Kenneth D. Owen, P.A.*

ELLIOTT v. OWEN

[99 N.C. App. 465 (1990)]

*Golding, Meekins, Holden, Cosper & Stiles, by John G. Golding, for defendant-appellees W. Joseph Porter, Robert A. Herrin and Porter, Barts, Herrin and Kirk, P.A.*

EAGLES, Judge.

[1] Plaintiff assigns as error the trial court's findings of fact that there existed no genuine issues of material facts and that defendants are entitled to judgment as a matter of law and the trial court's entry of judgment in favor of defendants dismissing plaintiff's action with prejudice. Plaintiff contends that several genuine issues of material fact are established in the record. First, plaintiff contends that an issue of fact exists concerning whether defendants rendered sufficient post-surgical follow-up care. We disagree and affirm.

Initially we note that

> [i]n a medical malpractice action, the plaintiff must prove that the defendant breached the applicable standard of care and that the defendant's treatment proximately caused the injury. Summary judgment is rarely appropriate in negligence cases. On a motion for summary judgment, the moving party has the burden of establishing that no triable issue of fact exists and that he is entitled to judgment as a matter of law. Once the moving party meets this burden, the burden is then on the opposing party to show that a genuine issue of material fact exists. If the opponent fails to forecast such evidence, then the trial court's entry of summary judgment is proper.

*White v. Hunsinger*, 88 N.C. App. 382, 383, 363 S.E.2d 203, 204 (1988).

G.S. 90-21.12 provides that

> [i]n any action for damages for personal injury or death arising out of the furnishing or the failure to furnish professional services in the performance of medical, dental, or other health care, the defendant shall not be liable for the payment of damages unless the trier of facts is satisfied by the greater weight of the evidence that the care of such health care provider was not in accordance with the standards of practice among members of the same health care profession with similar training and experience situated in the same or similar communities at the time of the alleged act giving rise to the cause of action.

"Our appellate courts have held that the standard of care adopted in G.S. 90-21.12 reflects the decisional law of our courts, and imposes a standard of care known as the 'same or similar community rule.' Usually, expert testimony is required to establish the standard, to show its negligent violation, and to show that such negligent violation was the proximate cause of the injury complained of." *Tice v. Hall*, 63 N.C. App. 27, 28, 303 S.E.2d 832, 833 (1983), *aff'd*, 310 N.C. 589, 313 S.E.2d 565 (1984).

Here, plaintiff cites *Starnes v. Taylor*, 272 N.C. 386, 158 S.E.2d 339 (1968), and *Dickens v. Everhart*, 284 N.C. 95, 199 S.E.2d 440 (1973), in support of her contention that a surgeon's duty to his patient does not terminate upon the completion of surgery but a surgeon also has the duty to provide follow-up care commensurate with the case and must exercise reasonable diligence in the application of his knowledge and skill giving the patient such attention as required. Plaintiff argues that "the post-surgical care rendered to Plaintiff by the Defendants was inadequate and not commensurate with the duty owed to the Plaintiff." Plaintiff argues that neither defendant Owen nor defendant Porter did anything to follow-up her condition after removing the surgical splint and discovering that additional treatment was necessary. In support of their respective motions for summary judgment, defendants submitted affidavits stating that they conformed to the standard of care in the practice of orthodontics in their community. Both defendants Porter and Herrin submitted affidavits expressing their opinion that their examinations, operative procedures, post-operative care, treatment and examination of plaintiff met acceptable standards in their community. Dr. Martin D. Barringer, an orthodontist, stated in an affidavit that he knew the standard of practice of orthodontics in Mecklenburg County in 1982 and 1983 and that "all of Dr. Owen's treatment, procedures, models and cephlometric x-rays were entirely consistent with and met the standard of care." Dr. David E. Kelly, also an orthodontist, stated in an affidavit that the "orthodontic set-up made by Dr. Owen in this case was entirely consistent with and met the standard of care."

In response plaintiff submitted an affidavit in which she alleged that Dr. Porter failed to tell her that she needed immediate treatment to avoid movement of her teeth. Plaintiff also submitted an affidavit from Dr. John G. Edwards, an orthodontist who treated plaintiff after defendants, which did not mention the standard of care with respect to this case. During deposition, Dr. Edwards

testified that he had reviewed defendant Owen's records concerning the diagnosis, treatment plan, and surgical prescription of plaintiff and that defendant Owen's treatment conformed with the standard of care in the practice of orthodontics in Mecklenburg County in 1981 and 1982. Dr. Edwards also testified that presurgery treatment and the surgery itself also conformed to the standard of care. Dr. Edwards further testified during deposition that he did not "expect to offer any expert testimony that either Dr. Owen or Dr. Porter breached any acceptable standard of care."

Here plaintiff has failed to show that a genuine issue of material fact exists concerning whether defendant had breached the applicable standard of care in their treatment of plaintiff including post-operative care. Accordingly, this contention has no merit.

[2] Secondly, plaintiff contends that there are significant issues of fact regarding the applicability of the doctrine of *res ipsa loquitur* to this case. We disagree.

> Generally, "[r]es ipsa applies when direct proof of the cause of an injury is not available, the instrumentality involved in the accident is under the defendant's control, and the injury is of a type that does not ordinarily occur in the absence of some negligent act or omission." . . . [T]he North Carolina Supreme Court has long recognized that where proper inferences may be drawn by ordinary men from proved facts which give rise to *res ipsa loquitur* without infringing this principle, there should be no reasonable argument against the availability of the doctrine in medical and surgical cases involving negligence, just as in other negligence cases, where the thing which caused the injury does not happen in the ordinary course of things. . . .

*Parks v. Perry*, 68 N.C. App. 202, 205-6, 314 S.E.2d 287, 289, *disc. rev. denied*, 311 N.C. 761, 321 S.E.2d 142; 311 N.C. 761, 321 S.E.2d 143 (1984). "The test of the applicability of *res ipsa loquitur* in medical malpractice cases is twofold: (1) the injurious result must rarely occur standing alone and (2) the result must not be an inherent risk of the operation." *Id.* at 206, 314 S.E.2d at 290.

Here, under the first prong of the *res ipsa* test plaintiff's own orthodontist, Dr. Edwards, testified during deposition that relapse was a known risk or possible result of the surgical procedure performed on plaintiff. Dr. Edwards testified that he did not think that plaintiff had suffered a relapse but he did not give

an opinion as to what had happened to plaintiff. Further, Dr. Barrington testified that while he did not know what happened in this particular case, relapse could in fact occur and that he had seen many of his own cases relapse. Dr. Barrington stated that one of his own patients returned to his office one or two weeks post-treatment and the patient's jaw was forward six millimeters and open six millimeters. He stated that the patient's condition was corrected within two weeks after wearing rubber bands. To explain why plaintiff's jaw was forward of its original position, defendant Owen testified that plaintiff's lower jaw had relapsed and dragged the upper jaw with it. Defendant Porter also testified that plaintiff's lower jaw had relapsed but he felt that plaintiff's problem could have been treated orthodontically. On this record there is ample evidence that relapse was an inherent risk of this type of surgery and that at the earliest detection of movement plaintiff was urged to return to defendant Owen to treat the relapse and prevent further movement. Accordingly, this contention must also fail.

[3]   Finally, plaintiff contends that the record establishes genuine issues of material fact regarding whether defendants obtained plaintiff's informed consent prior to performing the surgery in question. At the outset we note that plaintiff has failed to raise this contention either in her complaint or otherwise before the trial tribunal. Accordingly, this contention is not properly before this court. *See In re Bruce*, 97 N.C. App. 138, 387 S.E.2d 82 (1990).

In summary, plaintiff has failed to produce a forecast of evidence that defendants were negligent in their treatment of her condition. Accordingly, the decision of the lower court is affirmed.

Affirmed.

Judges WELLS and GREENE concur.

Judge WELLS concurring.

As the opinions of our appellate courts have made clear, the battle of experts begins very early in the usual medical malpractice case. *See, e.g., Beaver v. Hancock*, 72 N.C. App. 306, 324 S.E.2d 294 (1985).

In this case, defendants, through their forecast, were able to show by expert witnesses that they had not violated any standard

of care owed by them to plaintiff. This forecast required plaintiff to forecast *through an expert witness* that defendants had violated such a duty, which plaintiff simply failed to do.